20807

The STATE, Respondent, v. Lucille B. ROSS, Appellant.

(249 S.E. (2d) 159)

*Jesse A. McCall, Jr., Asst. Public Defender,* Greenville, *for appellant.*

*Atty. Gen. Daniel R. McLeod* and *Asst. Attys. Gen. Brian P. Gibbes* and *Robert N. Wells, Jr.,* Columbia, and *Sol. William W. Wilkins, Jr.,* Greenville, *for respondent.*

November 14, 1978.

LITTLEJOHN, Justice:

Lucille B. Ross was tried for the murder of Jackson Sprouse. She admitted the killing and pleaded self-defense. Following a jury verdict against her, she appealed, alleging errors in the admission of evidence and in the charge to the jury.

The events surrounding Sprouse's death are not disputed: Janice Brookshire and her brother-in-law, Buddy Mackey, were engaged in a fight in a tavern parking lot.. The decedent, who was Janice's estranged husband, pulled Janice away from Buddy and began kicking her. The defendant intervened to protect her sister, Janice. At some time after intervening, she drew a gun and killed Sprouse. There is testimony that Sprouse had a knife and that he was close enough to the defendant to use it, about three-and-a-half to four feet from her, when the shooting occurred.

At trial, Wayne Anthony was called as a witness for the prosecution during its case-in-chief. After he was asked a few preliminary questions, the following exchange, alleged to be erroneous and prejudicial, occurred:

"[Assistant Solicitor]

Q. Why type of relationship do you have with Lucille Ross? Or did you have? ·

A. I guess you would call it a love affair.

.    .    .    .    .

Q. And what would you all do when you would see each other?

A. Well, we would make love.

.    .    .    .    .

Q. Did you ever try to break off with her?

A. Yes, I did.

Q. And what happened?

[Defense Counsel] Partee: Your Honor, I don't know what we're trying here.

The Court: We're trying a murder case.

Mr. Partee: Yes, sir, but he's going into . . .

The Court: A relationship between the State's witness and the Defendant, which I think is relevant, if he doesn't get into too many true confessions.

[Assistant Solicitor]: No, sir, I'm not.

Q. Wayne, did you ever try to break off with her?

A. Yes. Several times. But I hadn't known her but four or five weeks about until she called me at my job and had me meet her at the Palmetto Drive-in on the Laurens Road. And she told me that she took a—that Janice took a moving picture of me lovin' her.

Q. Is that her sister?

A. Janice. Yeah.

Mr. Partee: Your Honor, this is far afield and I don't think it's proper.

The Court: There again, Mr. Partee, the relationship between this witness and the Defendant is important I suppose as it would bear on whatever he's going to testify to later and for that reason I'll have to admit it.

[Assistant Solicitor]:

Q. All right, Wayne, just continue, please sir.

A. Well, she called me a day or two after that and told me she had me on a movin' picture.

Q. Had you on a what?

A. On a movin' picture, a camera.

The Court: Her sister had made a moving picture of you and the defendant?

A. Yeah. And she asked me several times how would I like for her to show that to my wife.

[Assistant Solicitor]:

Q. Are you scared of Lucille Ross?

A. Yes, when she's mad I am.

Q. Why is that?

A. Well, she told me several times that she would shoot me.

Q. She would shoot you?

A. Yeah.

. . . . .

Mr. Partee: Excuse me. Now, Your Honor, that's going into her character and her propensity for violence and so forth that has not been brought into issue and we feel it is highly improper and prejudicial and would have to move for a mistrial on that basis."

The motion was denied.

We hold that admission of the above testimony was erroneous and prejudicial and that defense counsel did not waive his client's right to a new trial.

Character evidence is so highly prejudicial that it is usually excluded under hard and fast rules. *State v. Britt,* 235 S. C.

395, 111 S. E. (21) 669 (1959); McCormick, *Evidence* § 186, p. 442 (2d ed. 1972). The testimony quoted above went to the defendant's character. The agreed statement of facts, which is binding on the court, includes the following:

"Wayne Anthony then testified to the Defendant's bad character, propensity for violence and prior misconduct, in connection with his personal dealings with the Defendant, to which testimony Mr. Partee [defense counsel] objected. The objection was overruled, the testimony heard; and Mr. Partee moved for a mistrial, which motion was denied. Mr. Partee cross-examined the witness, reserving his objection to the testimony given on direct examination. . . ."

We agree that the testimony elicited had the effect of placing the bad character of the defendant in issue when she herself had not placed her good character in issue. Notwithstanding the admission of evidence which we find prejudicial, the State contends that the defendant waived her rights by counsel's failure to object more promptly. His objection to the blackmail testimony was timely. The assistant solicitor asked witness Anthony what happened when he attempted to break off his relationship with the defendant. Defense counsel promptly objected before an answer could be made. While it is true he did not clearly set forth the basis of his objection, it may have been because the court interrupted the attempted explanation. We decline to hold that, in order to preserve an objection, when the judge begins to speak counsel must try to speak over him.

We also hold that defense counsel did not waive his objection to testimony of the defendant's threat to shoot Anthony. The trial judge made it clear that he felt that evidence of the relationship between the defendant and Anthony was admissible. Two or defense counsel's objections on the subject had been overruled. It is understandable that he did not object when the assistant solicitor asked Anthony why he was scared of the defendant. Once the court rules on an objection to a line of questioning, it is not neces-

sary that counsel repeat his objection after each question. Wigmore, *Evidence* § 18, p. 331 (3rd ed. 1940).

The question of whether the defendant was the aggressor was important. The improper testimony went directly to that issue, and we cannot say that it did not affect the jury verdict adversely to the defendant. *State v. Singleton,* 167 S. C. 543, 166 S. E. 725 (1932). A new trial is required.

Reversed and remanded.

LEWIS, C. J., and NESS, RHODES and GREGORY, J.J., concur.