Benjamin STEVENS, Appellant,

v.

STATE of Alaska, Appellee.

No. A–1327.

Court of Appeals of Alaska.

Jan. 22, 1988.

---

Bessie O'Rourke, Asst. Public Defender, Palmer, and Dana Fabe, Public Defender, Anchorage, for appellant.

Nancy R. Simel, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Benjamin F. Stevens was convicted by a jury of burglary in the first degree, a class B felony, AS 11.46.300(a)(1); and attempted sexual abuse of a minor in the second degree, a class C felony, AS 11.31.100 and AS 11.41.436. Stevens appeals his convictions. We affirm.

## FACTS

On December 1, 1984, ten-year-old Z.N. and his mother, M.N., were living in a small house in Anchorage. M.N. had to work that night and when she left, Z.N. was alone in bed sleeping. M.N. had locked the door behind her when she left.

At approximately 3:00 a.m. that morning, Z.N. was awakened by the presence of a man in his bed. Z.N. testified that the man put his hand on the "side of [Z.N.'s] behind." Z.N. sat up and started to scream so the man put his hand over Z.N.'s mouth, pulled him back, and asked Z.N. if he believed in God. Z.N. tried to get away by hitting the man in the stomach. The man then got up and went to the door, zipped up his pants, and left the house. Z.N. told his dog to get the man and watched from a window as the man ran across the street with the dog in pursuit. Z.N. then called his mother and told her what had happened. She contacted the police.

The police obtained a description of the man from Z.N. and then followed footprints in the snow leading from M.N.'s house to an apartment nearby. The footprints took an unusual route and there were dog tracks beside them part of the way. The police knocked at the door of the apartment where the footprints led and the door was opened by Benjamin Stevens. Stevens resembled the description of the intruder that Z.N. had given to the policeman. The cuffs of Stevens' pants were wet. His explanation for this was that he had been out running. Stevens gave the police the shoes he had said he had been running in, and the police determined that the shoes matched the footprints they had followed. Stevens also showed the police the coat he said he had worn while running and it matched the description Z.N. had given of the coat worn by the intruder. Stevens denied being in M.N.'s house that night.

The police obtained a brown wool knit hat from M.N.'s house that had apparently been left there by the intruder. Hair samples found on the hat were later determined to match, in all respects, those taken from Stevens.

Approximately one week after the incident, Investigator Feichtinger of the Anchorage Police Department interviewed Stevens. During the interview, Stevens admitted that he had once had a brown wool

knit hat but said that he had lost it prior to December 1, 1984. Stevens allowed that he had been to M.N.'s house selling subscriptions, but maintained that he was not there on the night of the incident. Steven also admitted that he had a strong interest in religion and that he knew how to pick locks. Just prior to this interview, Z.N. was shown a photographic lineup and chose Stevens as the intruder.

## DISCUSSION

■ Stevens first argues that the trial court erred in failing to grant his motion to dismiss count II of the indictment charging attempted sexual abuse of a minor in the second degree. In Stevens' view, the prosecutor failed to instruct the grand jury on all the law applicable to that count. Stevens concedes that the jury was properly instructed as to count I.

At the beginning of his presentation, the prosecutor read to the grand jury the proposed indictment and some statutes and definitions. The record does not reflect what statutes and definitions were read. It is apparent from the briefs of the parties, however, that the only statutes and definitions read during the initial presentation pertained to count I, the burglary count. Even if we assume that no instructions pertaining to count II were read at that time, we, nevertheless, conclude that Stevens has failed to establish error, because the grand jury was ultimately given adequate instructions as to the law pertaining to count II.

Count II of the indictment states, in pertinent part, that:

Benjamin F. Stevens, being 16 years of age or older, did unlawfully and knowingly attempt to engage in sexual contact with Z.N., a child under the age of 13, . . .

This count of the indictment informed the grand jury of the basic elements of the offense. While the grand jury was deliberating, but before they had voted, the prosecutor interrupted them and gave them further instructions. He defined "sexual contact" for them. The record does not reflect what definition was read, but presumably it was taken from AS 11.81.900(b)(52).[1] The grand jury was then instructed as follows:

And despite the use of the word knowingly in this, in order to establish these crimes because it's an attempt and because its burglary, entering, it has to be—*there has to be proof of an intent to do these acts* that are described, the touchings that are described in the definitions that I just read to you. . . . (Emphasis added.)

Stevens argues that the grand jury was not accurately instructed on the law regarding attempt, the elements of sexual abuse of a minor in the second degree, and specific intent. He contends that an instruction on specific intent was particularly necessary since there was evidence that he was intoxicated at the time he allegedly committed the offenses. *See* AS 11.81.630 (proof of intoxication may negate "intent" where intent is required as an element of an offense).

The question on appeal is whether the terms in the indictment were sufficiently clear to be understood by the grand jury without further definition. *Oxereok v. State,* 611 P.2d 913, 917 (Alaska 1980); *Plant v. State,* 724 P.2d 536, 542 (Alaska App.1986). In this case, it is apparent that all the terms in the indictment were either words in common usage which were sufficiently clear to the grand jury or were defined for them. The prosecutor defined "sexual contact" for them. Also, the prosecutor instructed the grand jury that they must find that Stevens intended to commit the offense. "Attempt" was not defined, but it is a term easily understood by the grand jury. Hence, the prosecutor instructed the jury through the indictment, as to the elements of count II. He told

---

1. Under Alaska Statute 11.81.900(b)(52), one definition of "sexual contact" is:

   [T]he intentional touching, directly or through clothing, by the defendant of the victim's genitals, anus, or female breast; . . .

The state indicates, however, that the prosecutor used the term "knowingly" rather than "intentional."

them the relevant state of mind to apply, and read them a definition of the only potentially confusing term in the indictment.

Stevens argues that the grand jury might not have understood that an attempt requires a "substantial step" toward the commission of a crime. *See* AS 11.31.-100(a). We are not persuaded that the common understanding of an attempt is sufficiently different from the legal definition to mandate a fuller definition in the instructions. We therefore conclude that the trial court did not abuse its discretion in denying Stevens' motion to dismiss.

■ Stevens next argues that the trial court erred in denying his motion for a protective order prohibiting Investigator Feichtinger from testifying about statements Stevens made while being interviewed one week after the incident concerning Stevens' sexual fantasies and orientation. Defense counsel filed the motion just before trial. The trial court reserved ruling at that time, but ultimately allowed Feichtinger to testify about Stevens' statements. Feichtinger testified as follows:

> [Stevens] said that he's a heterosexual in his orientation, that he has never had a homosexual experience. . . .
>
> . . . .
>
> We talked about fantasies quite a bit and [Stevens] indicated that his fantasies were primarily heterosexual, that sometimes he—he made one reference to children, teenage girls and wearing shorts and how they could drive you nuts at times. Later we talked again about fantasies and he stated that on occasion in acts of masturbation, he would have in his words abnormal type fantasies, but that he didn't feel that they were prominent in his—his sexual fantasies. He said that—I asked him specifically if he ever fantasized about young boys and his response was that if he did, he would seek release from masturbation, that he would never act something like that out.

On cross-examination, Feichtinger indicated that Stevens said that he did not have fantasies involving young children. Feichtinger also admitted that, at times, he too had found teenage girls in shorts to be attractive.

Stevens argues that the trial court abused its discretion when it allowed Feichtinger to testify about these statements. The state concedes error, and admits that under Alaska Rules of Evidence 404(b) and 403, these statements were not admissible and that, therefore, it was an abuse of discretion to allow Feichtinger to testify about them. The state contends, nevertheless, that the error was harmless.

We have carefully reviewed the record and accept the state's concession of error. *See Marks v. State*, 496 P.2d 66, 67–68 (Alaska 1972). This was clearly character evidence and it was not relevant to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. A.R.E. 404(b). The evidence was relevant, if at all, only to show Stevens' propensity to commit a sex crime. It should not have been admitted. *See Lerchenstein v. State*, 697 P.2d 312 (Alaska App.1985), *aff'd* 726 P.2d 546 (Alaska 1986) (character evidence must have relevance apart from propensity, and that relevance must outweigh the presumed highly prejudicial impact of such evidence).

In the trial court, the state argued that Stevens' statements about his fantasies showed that he had strong sexual desires that he was unsuccessfully trying to overcome through religion. The state considered Stevens' seeing a connection between sex and religion particularly significant because Z.N. testified that the intruder asked him if he (Z.N.) believed in God just before breaking off the assault and fleeing. It would appear, therefore, that the state hoped to use the testimony to establish Stevens' identity as the intruder.

This evidence was unnecessary for this purpose in light of the strong case the state had against the defendant. *Cf. Lerchenstein v. State*, 726 P.2d at 550 (Rabinowitz, C.J., dissenting) (since it is the incremental probity of the evidence that must be balanced against its potential for undue prejudice, if the government has a strong case on the disputed issue, the prior

bad act evidence adds little and will be more readily excluded).

The evidence is inadmissible for any other purpose since there is no nexus or connection between Stevens' sexual fantasies, as described, and the commission of the offense. *See Page v. State,* 657 P.2d 850, 851–53 (Alaska App.1983) (requiring expert testimony to establish nexus between owning pornography and defense theory that owner attempted a homosexual rape of the defendant before ownership of pornography could be offered as evidence in support of self-defense theory to charge that defendant murdered owner). This is not a case in which the connection between the fantasy and the completed crime is a matter of common knowledge or understanding. *Compare Keith v. State,* 612 P.2d 977, 983–84 (Alaska 1980) (exclusion of victim's journal to show his mental instability, paranoia, and violent nature in support of a self-defense claim was prejudicial error).[2]

We recognize that a trial judge has reason to complain when the state vigorously argues that evidence should be admitted and then, when it is admitted, is forced to concede error on appeal. Nevertheless, the primary responsibility for properly administering Alaska Evidence Rules 404 and 403 falls on the trial court, and the trial court should never admit evidence that might be adverse to a defendant unless it is abundantly clear in the record that the probative value of the evidence outweighs any prejudice that might arise. Where, as here, the

probative value is virtually nonexistent, such evidence should not be admitted.

█ The state argues that the evidence could not have substantially influenced the jury's verdict and, therefore, was harmless. *See Fields v. State,* 629 P.2d 46, 51 (Alaska 1981); *Love v. State,* 457 P.2d 622, 631 (Alaska 1969); Alaska Criminal Rule 47(a). We consider this a very close case. When a prosecutor vigorously argues that evidence is necessary to the state's case in the trial court, the argument on appeal that the evidence had no impact on the jury is questionable. Although the evidence against Stevens was substantial, we are troubled that his sexual feelings were placed before the jury. It is a serious violation of privacy to unnecessarily parade anyone's sexual feelings, fears, and desires before a jury. *Cf. Pickens v. State,* 675 P.2d 665, 668–70 (Alaska App.1984) (restricting a defendant's right to have the complaining witness to a sexual offense examined by a psychologist). We would be strongly motivated to reverse this case, but for the strength of the evidence against Stevens,[3] and our conclusion that Stevens' attorney demonstrated the irrelevance of this evidence on cross-examination. *Sheakley v. State,* 644 P.2d 864, 871–73 (Alaska App.1982) (refusing to find plain error despite inappropriate cross-examination of defense expert where witness effectively rehabilitated on re-direct). We also note that the testimony was brief and the prosecutor did not refer to it again. Stevens was charged with an attempted homosexual assault on a ten-year-old boy, whereas the bulk of the disputed testimony related to fairly typical heterosexual feel-

---

**2.** Alaska Evidence Rule 401 provides:

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

There was no evidence in *Page* that people who owned pornography were more apt to attempt homosexual rape than those who do not. By the same token, there was no evidence in this case that people who have sexual concerns that they hope to control through religion are more apt to break into a home and sexually assault an occupant. In our view, Z.N.'s testimony about the intruder's religious belief does not establish the required nexus.

**3.** Z.N.'s identification of Stevens, the positive match of his head hair with the hair on the cap left by the intruder, Stevens' concession that he owned a similar cap and lost it shortly before the incident, the footprints matching Stevens' shoes leading from Z.N.'s residence to Stevens' residence, and the condition of Stevens' clothing demonstrate Stevens' identity as the intruder. The fact that he had to break into a locked residence and his unequivocal actions while there, sufficiently establish *mens rea.* We stress that the testimony relating to Stevens' sexual fantasies did not directly undercut any specific defense theory of the case.

ings. Stevens' reference to resolving any fantasy about male children through masturbation is more troublesome but, on balance, is unlikely to have substantially influenced the jury. It seems to us that Stevens' fantasies, as described, would not lead the jury to disregard its responsibilities in carefully weighing the evidence and determining the merits of the case. *See Keith v. State*, 612 P.2d at 984. We there-

fore find that the error, though regrettable, was harmless.

The judgment of the superior court is AFFIRMED.