23004

Addie MITCHELL, Petitioner v. STATE of South Carolina, Respondent.

(379 S. E. (2d) 123)

Supreme Court

*Assistant Appellate Defender Daniel T. Stacey* of *S. C. Office of Appellate Defense,* Columbia, *for petitioner.*

*Attorney Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka* and *Asst. Atty. Gen. Frank L. Valenta, Jr.,* Columbia, *for respondent.*

Submitted Feb. 21, 1989.

Decided April 24, 1989.

*Per Curiam:*

This case is before the Court on a writ of certiorari following the denial of petitioner's application for post-conviction relief. We reverse and remand for a new trial.

## FACTS

On August 9, 1981, the petitioner allegedly entered a private dwelling and opened fire on her husband and his paramour. The husband died; the paramour received several gunshot wounds, but was not seriously injured.

Petitioner Addie Mitchell (Mitchell) was convicted of murder, burglary, and assault and battery with intent to kill (ABIK). She received life sentences for the murder and burglary convictions and a consecutive 20 year sentence for the ABIK. Mitchell's direct appeal was dismissed.[1] In her application for post-conviction relief (PCR), Mitchell alleged ineffective assistance of counsel. A hearing was held and the PCR application was denied; we granted certiorari to consider Mitchell's allegations of ineffective assistance of counsel.

---

[1] *State v. Mitchell,* 84-MO-204 (filed October 9, 1984).

## DISCUSSION

Mitchell alleges that counsel was ineffective for failing to object to the admission of character evidence elicited from witnesses for the State. Mitchell testified at the trial. At trial, testimony was introduced concerning the appearance of Mitchell's home and her conduct there. The murder did not occur at her home. Additional testimony was introduced alleging that Mitchell was a "Mafia" member.

The police officer who searched Mitchell's home testified that her living room was a "ceremony room"; he described the fireplace as an "altar" surrounded by "artifacts" and "wax candles with little devils." He further testified that there was a closet with a one-way mirror for viewing the "ceremony room"; he testified that "more devil figurines" were found in the bathroom. The officer also testified that Mitchell's home was equipped with a surveillance system. He testified that she had a camera placed over the front door by which she could view the door from a television in her bedroom.

A second State's witness testified that she had visited the home and had seen devil-shaped candles in the fireplace. Another State's witness, Mitchell's roommate, testified that Mitchell selected different colors of candles which she named for people she knew. She further testified that people would visit Mitchell's home to "work the candles." Mitchell's counsel did not object to the introduction of any of this evidence as improperly placing Mitchell's character in issue. He also did not object to references to this evidence during closing argument.

Later, the prosecution cross examined Mitchell's son as to whether he had told his psychiatrist that his mother was a member of the Mafia. The son answered affirmatively. Counsel did not object, nor did he object when the solicitor referred to Mitchell as a "Mafia member" in closing argument.

In a criminal case, the State cannot attack the character of the defendant unless the defendant herself first places her character in issue. *State v. McElveen*, 280 S. C. 325, 313 S. E. (2d) 298 (1984); *State v. Swords*, 279 S. C. 554, 309 S. E. (2d) 750 (1983); *State v. Gamble*, 247 S. C. 214, 146 S. E. (2d)

709 (1966). Further, evidence of prior bad acts is inadmissible to show criminal propensity or to demonstrate that the accused is a bad person. *State v. Johnson,* 293 S. C. 321, 360 S. E. (2d) 317 (1987). Counsel's failure to object to the introduction of this character evidence constituted ineffectiveness.

The question then becomes whether "there is a reasonable probability that, but for counsel's ... errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Strickland v. Washington,* 466 U. S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. (2d) 674, 698 (1984).

The State's case was based entirely on circumstantial evidence. There was no direct evidence linking Mitchell to the crime. Therefore, Mitchell's credibility was the main issue before the jury. The solicitor introduced impermissible evidence of "devil worship" and Mafia membership to suggest that Mitchell was a bad person with a propensity to commit the crime. We find a reasonable probability that, had defendant's character not been improperly placed into issue, the outcome would have been different. We therefore reverse the decision of the court denying Mitchell's PCR application and remand for a new trial.

Although not necessary for a disposition of the case at this level, petitioner raised an additional ground of merit. Because this case may be re-tried, we will briefly address this issue.

At trial, the court allowed the prosecution to introduce impeachment evidence of Mitchell's previous New York manslaughter conviction. While it is true that evidence of a witness's prior conviction may be introduced to impeach his credibility, it is firmly established that the conviction must relate to a crime involving moral turpitude. *State v. Perry,* 294 S. C. 311, 364 S. E. (2d) 201 (1988); *State v. Morris,* 289 S. C. 294, 345 S. E. (2d) 477 (1986).

The crime of first degree manslaughter in New York has the same elements as voluntary manslaughter in South Carolina. N. Y. Penal Law § 125.20 (McKinney (1987). In South Carolina, manslaughter is not a crime of moral turpitude. *Taylor v. State,* 258 S. C. 369, 188 S. E. (2d) 850 (1972); *State*

*v. McFarlane,* 279 S. C. 327, 306 S. E. (2d) 611 (1983). Therefore, evidence of the crime is inadmissible.

Reversed and remanded.