1888

The STATE, Respondent v. Brian Wayne ATKINS, Appellant.

(424 S.E. (2d) 554)

Court of Appeals

*Jonathan Harvey*, Columbia, *for appellant.*

*Attorney General T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Asst. Atty. Gen. Harold M. Coombs, Jr.,* and *Staff Atty. Rakale B. Smith,* Columbia, and *Sol. Donald V. Myers,* Lexington, *for respondent.*

Heard Aug. 25, 1992.

Decided Nov. 16, 1992.

*Per Curiam:*

Appellant, Brian Wayne Atkins, was convicted by a jury of first-degree burglary and first-degree criminal sexual conduct against a minor. He appeals on several grounds. We reverse and remand for a new trial.

The victim in this case is a nine-year-old black female. She was sexually assaulted in her bedroom in an apartment complex on May 22, 1990. On the night in question, the victim was asleep in her bedroom when she awoke to find a man digitally penetrating her vagina. As the victim ran for her bedroom door, the assailant jumped from the bedroom window and fled through the parking lot. The next day the victim put together a composite drawing of the man she had seen in her bedroom.

Approximately five months later, a six-year-old white male (second victim) was sexually assaulted in an apartment complex about a mile away. The second victim was asleep when he was awakened by a male intruder in his bedroom. The man was performing fellatio on the boy. The man left the apartment through the child's bedroom window. The next day the boy was taken to the Lexington County Sheriff's Office where he also completed a composite drawing of the intruder.

A Lexington County Sheriff's investigator noticed similarities in the composites and circulated the composites to law enforcement officers in both Lexington and Richland Counties. As a result, the investigator was furnished a photo lineup from Richland County which included Atkins' photo. The first victim picked Atkins out of the photo lineup. The second victim was unable to do so. Atkins was subsequently arrested

and charged with first-degree burglary and first-degree criminal sexual conduct. He was not charged in connection with the assault on the boy.

After his arrest and during an interview by a county employee to determine eligibility for a public defender, Atkins made the statement: "I did it, I don't know why I did it, I need help." The State and Atkins disagree as to which assault this statement refers. A pubic hair taken from the second victim's bed was found to be consistent with Atkins' pubic hair, but was not positively identified as his. Also, semen found on the second victim's bed linen was found not to have been secreted by Atkins.

On appeal, Atkins argues he did not receive a fair trial because of the admission of certain evidence, the exclusion of evidence, and the conduct of the trial judge in improperly injecting himself into the trial proceeding. Because we reverse Atkins' guilty verdict, we need only address the issues concerning (1) the admission of testimony about the assault on the second victim; and (2) the admission of a 1989 statement made by Atkins to the police.

## SUBSEQUENT BAD ACTS

Atkins argues evidence of the sexual assault upon the second victim was inadmissible because there was an insufficient connection between the assaults. He also asserts there was no clear and convincing evidence he was guilty of the second assault. Additionally, he argues the danger of prejudice from the admission of this evidence outweighed its probative value.

It has long been recognized evidence of other bad acts is not admissible to prove the defendant's bad character or criminal tendencies. *State v. Gregory*, 191 S.C. 212, 4 S.E. (2d) 1 (1939). Such evidence is admissible only to establish a material fact or element of the crime charged. *State v. Johnson*, 293 S.C. 321, 360 S.E. (2d) 317 (1987); *State v. Byers*, 277 S.C. 176, 284 S.E. (2d) 360 (1981). Evidence of prior bad acts is admissible to prove the crime charged when it establishes motive, intent, identity, absence of mistake, or a common scheme or plan. Such evidence is inadmissible unless its close similarity to the charged offense enhances its probative value so as to outweigh its prejudicial effect. *State v. McClellan*, 283 S.C. 389, 323 S.E. (2d) 772 (1984).

The State introduced evidence of the assault upon the second victim to show Atkins' common scheme or design to obtain sexual gratification by molesting small children. It was thus incumbent upon the State to show by clear and convincing evidence that Atkins had in fact committed the assault upon the second victim. *State v. Bell*, 302 S.C. 18, 393 S.E. (2d) 364 (1990). If this threshold burden is not found to have been met, the court need not concern itself with the issues of probative value and prejudicial effect of the evidence. *See State v. Smith*, 300 S.C. 216, 387 S.E. (2d) 245 (1989) (proof of prior bad acts must be clear and convincing).

The State argues the following facts constitute clear and convincing evidence. The victims put together convincingly similar composites. The pubic hair found on the second victim's bed linen proved to be microscopically consistent with a pubic hair sample taken from Atkins. Finally, the State claims statements made by Atkins to the county indigency interviewer, Hope Frick, amounted to a confession.

At trial, and in its brief, the State takes the position the statement made to Hope Frick concerned the assault on the second victim. In admitting evidence of the second assault, the trial judge also ascribed the statement to the second assault. The Defendant claims the statement relates to the assault upon the first victim. The record is unclear as to which assault Atkins was referring when he made the statement.

With regard to the composite drawings, the probative value of that evidence must be viewed in light of other evidence that the second witness was unable to pick Atkins from a photo lineup. Additionally, the pathologist who testified concerning the hair analysis stated the analysis was not a means of identification. His testimony addressed the similarities of characteristics between the hair found in the apartment and Atkins' pubic hair. He gave no percentages as to how many others in the general population would exhibit the same characteristics.

In view of the fact forensic evidence showed the semen in the second victim's bed was not that of Atkins, the absence of a positive identification of Atkins as the perpetrator of the second assault, and possible jury confusion regarding the statement made to Hope Frick, we hold the evidence is less than clear and convincing that Atkins was guilty of the assault upon the second victim. The prejudice from the admission of

this evidence far outweighs its probative value in proving Atkins' guilt of the crime for which he was tried. *Id.*

The State argues in its brief that even if the admission of this evidence was error, such error was harmless beyond a reasonable doubt. The State points to the first victim's positive identification of Atkins from the photo lineup. Considered in isolation there is merit to the State's position. However, in view of the erroneous admission of other evidence discussed below, we hold the admission of this evidence was not harmless beyond a reasonable doubt.

## ADMISSION OF 1989 STATEMENT

In October 1989, Atkins was arrested for committing a lewd act on a minor. After waiving his *Miranda* rights, Atkins confessed to the crime stating: (1) he was sexually abused by his high school coach; (2) as a result, he had a desire to have sex with children; and (3) if he did not get help, he would continue abusing children. The trial judge admitted the statement as relevant to motive and why Atkins had a "perverted" mind.

Atkins makes two basic arguments on this issue. First, the evidence was inadmissible because it was introduced to show a criminal propensity to sexually abuse children and, second, the method of introducing the evidence was highly prejudicial. We agree. At trial, a witness for the State was permitted to testify Atkins made the 1989 statements without reference to the time frame in which the statements were made. The jury could well have believed the statements related to the present crime. This situation was compounded by the fact the jury may have also attributed the statement made to Hope Frick to the present crime.[1] Taken together, the jury may well have consid-

---

[1] Atkins was arrested on October 22, 1990. The State claims the arrest stemmed from the second assault, while Atkins claims the arrest stemmed from the first assault. On October 25, the police obtained a search warrant for hair samples from Atkins in connection with an investigation concerning the second assault. In discussing the search warrant, the investigating officer testified Atkins was charged with the first assault and was a "very strong suspect" in the second assault. On October 26, 1990, Atkins was interviewed by Hope Frick from the Lexington County Clerk of Court's Office. Part of Ms. Frick's job was to determine detainees eligibility for public defender representation. During the interview, Frick asked Atkins a series of questions designed to determine his eligibility. When she asked him if there were any codefendants involved, Atkins replied: "No, I did it. I don't know why I did it, I need help."

ered these statements sufficient evidence of guilt regardless of other evidence. Moreover, we are convinced the primary purpose for admitting the 1989 statement was to show Atkins' propensity to sexually abuse children. The admission was error. *State v. Diddlemeyer*, 296 S.C. 235, 371 S.E. (2d) 793 (1988); *State v. Johnson*, 293 S.C. 321, 360 S.E. (2d) 317 (1987).

In conclusion, because we have determined this case must be reversed, we need not discuss the other grounds Atkins argues for reversal. Accordingly, the order of the trial court is reversed and the case is remanded for a new trial.

Reversed and remanded.