501 S.E.2d 716

**The STATE of South Carolina, Respondent,**

v.

**Larry Don NELSON, Petitioner.**

**No. 24778.**

Supreme Court of South Carolina.

Heard Oct. 22, 1997.

Decided April 6, 1998.

Rehearing Denied May 18, 1998.

2

Jack B. Swerling, Columbia, for petitioner.

Charles Molony Condon, Attorney General, John W. McIntosh, Deputy Attorney General, Donald J. Zelenka, Assistant Deputy Attorney General, William Edgar Salter, III, Senior Assistant Attorney General, Columbia; and Donald V. Myers, Solicitor, Eleventh Judicial Circuit, Lexington, for respondent.

WALLER, Justice:

Petitioner Larry Don Nelson was convicted of four counts of first degree criminal sexual conduct ("CSC") with a minor, and four counts of lewd act on a minor. The victim was a three year old child. The offenses allegedly occurred between December 1991 and June 1992, when the victim would accompany her father to Petitioner's home (to visit Petitioner's brother, with whom Petitioner lived). All of the offenses allegedly occurred in Petitioner's bedroom.

Petitioner was sentenced to thirty years imprisonment for each count of CSC, and to ten years imprisonment for each count of lewd act. The sentences were ordered to run consecutively. The Court of Appeals affirmed Petitioner's conviction. *State v. Nelson*, 322 S.C. 377, 471 S.E.2d 767 (Ct.App. 1996). This Court granted certiorari to consider whether certain evidence was properly admitted at trial. We find it was not, reverse Petitioner's convictions, and remand for a new trial.

## ISSUES

I. Did the trial court err in admitting certain physical evidence found in Petitioner's bedroom?

II. Did the trial court err in admitting details of post-arrest statements Petitioner made to police?

*DISCUSSION*

### I. Physical Evidence

At trial, the State introduced the following evidence, consisting of exhibits or testimony about exhibits seized from Petitioner's bedroom after his arrest [1]:

(1) Two stuffed animals, "Cookie Monster" and "Oscar the Grouch."

(2) Testimony about some fifty-eight homemade videotapes containing various segments taped from television programs, including a school district's schedule of events, "Mr. Knozit" shows, children's aerobics, cartoons, children's game shows, young girls' Olympic gymnastic events, and a "just say no"-type show teaching children about molestation.

(3) Excerpts from *Grimm's Complete Fairy Tales,* specifically "The Fitcher's Bird Tale," a story about a wizard who takes young girls from their homes (parts of which had been underlined). Attached to the front page was a laminated picture of a young, three to four year-old white child with long brown hair.[2] Inserted in the book elsewhere were pictures of "Save the Children" advertisements about young female children with brown hair. On the back of one of these advertisements was an article entitled "Modern Day Monsters," the subject of which was child molestation.

(4) A photo album containing a collage of magazine pictures of young girls dressed variously in gymnastic clothes, underwear, bathing suits, and full clothing.

(5) Petitioner's wallet, containing his driver's license (showing his DOB as 1/4/50), a "punch-out label" containing Punky Brewster's name, and Petitioner's membership card to the official Punky Brewster fan club.[3]

---

1. Petitioner gave police written consent to search his residence.

2. Testimony was introduced that this and other photos resembled the victim.

3. Punky Brewster is a child celebrity, a young white female with long brown hair.

(6) A picture frame containing a commercial picture of a young white female with long brown hair, dressed in gymnastic clothing.

(7) A laminated picture of a young white female with shoulder-length brown hair, lying on a couch.

(8) A laminated picture on a card of a young white female with long brown hair, wearing night clothing, apparently cut from a magazine advertising circular.

(9) A picture frame containing two laminated pictures of the same young white girl, apparently cut from a magazine advertisement, with long brown hair.

(10) One of six offered pictures of Punky Brewster.[4]

Petitioner argued the evidence was improper character evidence and should be excluded.

■ While initially, during a motion *in limine* hearing, the judge thought the offer of evidence was "ludicrous," he changed his mind after the State put up the testimony of an expert on sexual trauma and abuse of children. In part, this witness testified about general characteristics of pedophiles.[5] She testified pedophiles often have fantasies about taking children away from other adults. She also testified pedophiles often "have a pretty good stash" of childlike items, including videotapes, children's books, children's clothing, children's toys, photographs, drawings, and pictures, in part used for sexual gratification. When the State then moved to introduce the physical evidence later in the trial, the judge overruled Petitioner's argument it was improper character evidence, finding it was probative not of a "character issue" but of a "personality characteristic."

The Court of Appeals affirmed the admission of evidence, holding that "[w]hether or not the evidence in question inci-

---

4. The Court of Appeals recited a slightly different list of evidence than this. *See Nelson*, 322 S.C. at 380, 471 S.E.2d at 769. Apparently, that Court made its list from what the State contended it would introduce at the motion *in limine* hearing, not what was actually introduced at trial.

5. The expert testified pedophile means "love of children." Pedophilia has been defined as "sexual perversion in which children are the preferred sex object." *Dyer v. Commonwealth*, 816 S.W.2d 647, 650 n. 1 (Ky.1991) (quoting Webster's Ninth New Collegiate Dictionary (1983 ed.)).

dentally reflected poorly on [Petitioner's] character, it was relevant to show [Petitioner's] motive to commit the crimes for which he was charged." 322 S.C. at 381, 471 S.E.2d at 769. It then found the probative value of the evidence outweighed any danger of unfair prejudice from its admission. *Id.* at 382, 471 S.E.2d at 770. Petitioner argues error in this holding. We agree.[6]

In a criminal case, the State cannot attack the character of the defendant unless the defendant first places his character in issue. *Mitchell v. State*, 298 S.C. 186, 379 S.E.2d 123 (1989) (per curiam). In a similar vein, evidence of other crimes or bad acts is generally inadmissible to prove the crime charged unless the evidence tends to establish (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme or plan, or (5) identity. *State v. Stokes*, 279 S.C. 191, 304 S.E.2d 814 (1983); *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923).[7] Both rules are grounded on the policy that character evidence is not admissible "for purposes of proving that the accused possesses a criminal character or has a propensity to commit the crime with which he is charged." *State v. Peake*, 302 S.C. 378, 380, 396 S.E.2d 362, 363 (1990).

We find the evidence clearly inadmissible under these standards. As the trial judge himself recognized, its only relevance is as it reflects on an aspect of Petitioner's charac-

---

6. Considering that the ultimate goal behind preservation of error rules is to insure that an issue raised on appeal has first been addressed to and ruled on by the trial court, we reject the State's argument that consideration of this issue is procedurally barred under the facts of this case. *Cf. State v. Ross*, 272 S.C. 56, 249 S.E.2d 159 (1978) (once the court rules on an objection to a line of questioning, it is not necessary that counsel repeat the objection after each question).

7. The substance of these common law rules has now been codified in SCRE 404 (not in effect at the time of Petitioner's trial):

(a) **Character evidence generally.** Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except: [exceptions not pertinent here].

(b) **Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent.

ter, i.e. that he is a pedophile.[8] We find the distinction between "character" and "personality characteristic" misplaced. "The term 'character' refers to a generalized description of a person's disposition or a general trait such as honesty, temperance or peacefulness. Generally speaking, character refers to an aspect of an individual's personality which is usually described in evidentiary law as a 'propensity.'" *State v. Smith,* 84 Ohio App.3d 647, 617 N.E.2d 1160, 1169 (1992), *cert. denied,* 66 Ohio St.3d 1488, 612 N.E.2d 1244 (1993) (internal quotation omitted) (finding testimony regarding pedophile characteristics probative of the issue of character). *See also* Christopher B. Mueller & Laird C. Kirkpatrick, Modern Evidence § 4.11 (1995) (as used in federal rules, "character" means "a person's disposition or propensity to engage or not engage in various forms of conduct"). Such evidence could only invite the jury to infer Petitioner was acting in conformity with this character trait when he committed the crimes with which he was charged. Because this is an improper basis upon which to determine guilt, the evidence should not have been admitted. *See, e.g., Underwood v. State,* 309 S.C. 560, 563–64, 425 S.E.2d 20, 23 (1992) (expert testimony regarding "common profile" of people who sexually abuse children admissible because it was offered to explain *physical injuries* of victim as opposed to "personality or character traits which petitioner possessed in order to identify him as the offender").

Several states have rejected testimony or evidence showing a defendant is a pedophile for this exact reason. *See, e.g., Turtle v. State,* 600 So.2d 1214, 1221 (Fla.Dist.Ct.App.1992) (error in admitting expert testimony about characteristics of pedophile because it was asking "the jury to convict because the defendant fit a pedophile profile"); *Francis v. State,* 512 So.2d 280, 282 (Fla.Dist.Ct.App.1987) (error in admitting expert testimony that defendant has a "personality characteristic of being attracted to children"); *State v. Hester,* 114 Idaho

---

**8.** In admitting the evidence, the judge stated:

I don't think it has anything to do with impugning his character at all. It's not a character issue. It's a personality characteristic that is consistent with perhaps the testimony of the [expert witness] as to the profile of what is referred to as a pedophile, which appears to be consistent with the charges and the facts here.

688, 760 P.2d 27 (1988) (error in admitting expert testimony that defendant had character traits consistent with those of known child abusers); *People v. Bagarozy,* 132 A.D.2d 225, 522 N.Y.S.2d 848, 853 (1987) (error in admitting evidence seized from defendant's apartment including NAMBLA [9] newsletters, photographs, and films because "the true purpose behind the introduction of this evidence was to expose defendant's sexual preferences and attitudes in order to demonstrate a propensity to commit the crimes charged"); *Smith,* 617 N.E.2d at 1160 (error in admitting expert testimony on general pedophile characteristics); *Brewington v. State,* 802 S.W.2d 691, 692 (Tex.Crim.App.1991) (en banc) (reversing conviction because "it is clear from the record that the prosecutor sought to introduce testimony that appellant was a fixated pedophile solely to prove appellant's propensity to molest children and that he acted in conformity therewith when he committed the charged offense").

In *Dyer,* the Supreme Court of Kentucky addressed a factual scenario very similar to the case *sub judice.* 816 S.W.2d 647. The defendant was on trial for sodomizing a child under the age of twelve. The state introduced evidence seized from the defendant's apartment, including old posters of former teenage idols, nude pictures and articles from pornographic magazines, a pamphlet about homosexual activity, pictures of boys cut from newspapers, and other publications. The police officer describing the seized evidence was allowed to testify about general pedophile characteristics, and to state that in the search of defendant's house he was looking for any evidence that would "relate to, ah, possible characteristics of a pedophile." *Id.* at 650. In reversing defendant's conviction, the court stated:

> It is obvious the real purpose, the sole purpose, of this evidence was, in general, to prove the appellant was a sexual pervert, and, in particular, to prove that his perversion was pedophilia, and to do so on the basis of reading material found in his possession some of which would offend a substantial number of jurors, prejudicing them against the appellant without regard to whether it proved anything

---

**9.** North American Man–Boy Love Association, which advocates sexual activity between adults and boys.

against him. The various pornographic pictures and articles and the nondescript photographs and memorabilia were devoid of meaning except that provided by the investigating police officer's testimony and the prosecutor's argument labeling the material seized proof that the appellant was a pedophile.

We declare, unqualifiedly, that citizens and residents of Kentucky are not subject to criminal conviction based upon the contents of their bookcase unless and until there is evidence linking it to the crime charged. . . . If this material is supposed to provide a picture of the appellant as a pedophile, such profile evidence is inadmissible in criminal cases to prove either guilt or innocence.

*Id.* at 652.[10]

The State argues the evidence was not offered to show Petitioner's character, but was instead admissible under *Lyle* to show motive, intent, and a common scheme or plan. We disagree, finding little to no probative value regarding any of these theories.[11] Furthermore, the very apparent prejudicial

---

**10.** We have found no cases in South Carolina directly addressing the issue involved here. Most cases even remotely similar concern the admission of a defendant's prior sexual offenses or misconduct, as opposed to physical evidence showing sexual preferences or tendencies, usually analyzed under the "common scheme or plan" exception in *Lyle. See, e.g., State v. Bell*, 302 S.C. 18, 393 S.E.2d 364, *cert. denied*, 498 U.S. 881, 111 S.Ct. 227, 112 L.Ed.2d 182 (1990); *State v. Rogers*, 293 S.C. 505, 362 S.E.2d 7 (1987), *overruled on other grounds, State v. Schumpert*, 312 S.C. 502, 435 S.E.2d 859 (1993); *Stokes*, 279 S.C. 191, 304 S.E.2d 814; *State v. Rivers*, 273 S.C. 75, 254 S.E.2d 299 (1979); *State v. Henry*, 313 S.C. 106, 432 S.E.2d 489 (Ct.App.1993); *State v. Atkins*, 309 S.C. 542, 424 S.E.2d 554 (Ct.App.1992).

**11.** For the purposes of this discussion, we are assuming without so deciding that this evidence invokes the *Lyle* analysis. *Lyle,* is generally thought of as involving evidence of a prior crime or bad act. While the evidence introduced here connotes bad character, it is questionable whether it is evidence of a prior "bad act." It certainly is not evidence of a prior crime. This Court has applied *Lyle* to evidence not outwardly showing a crime or bad act, but which connotes bad character. *See, e.g., Mitchell v. State*, 298 S.C. 186, 379 S.E.2d 123 (1989) (applying *Lyle* rules to testimony defendant was a Mafia member, as well as evidence found in defendant's residence implying she was a devil worshiper, but which in itself was innocuous: wax candles of little devils, devil figurines, surveillance cameras); *State v. Stokes*, 279 S.C. 191, 304 S.E.2d 814 (1983) (applying *Lyle* to evidence defendant offered

impact such evidence would have upon a jury outweighs what probative value, if any, it may have. *State v. Alexander,* 303 S.C. 377, 401 S.E.2d 146 (1991) (even relevant and otherwise admissible evidence may be excluded for undue prejudice).

The Court of Appeals agreed with the State's argument regarding motive, primarily relying on our decisions in *State v. Bell,* 302 S.C. 18, 393 S.E.2d 364 (1990), and *State v. Johnson,* 306 S.C. 119, 410 S.E.2d 547 (1991), *cert. denied,* 503 U.S. 993, 112 S.Ct. 1691, 118 L.Ed.2d 404 (1992). Both cases are distinguishable from the instant case.

In *Bell,* we held tape recordings in which Bell discussed the details of sexual experiences he had with a prior murder victim were properly admitted as demonstrating a possible sexual motive for kidnaping the current victim.[12] Bell was not on trial for a sex crime, and the evidence showed a possible motive for a crime that could have been committed for any number of reasons. The evidence also involved Bell's admitting he kidnaped and murdered the first victim (the implication being he was similarly sexually motivated in committing that crime).

Here, Petitioner was on trial for sexual offenses; there is little doubt the motivation for such offenses is, at least in part,

---

victim money to "meet him at the railroad tracks"). Other cases have described *Lyle* without referring to "bad acts." *See, e.g., State v. Rogers,* 293 S.C. 505, 362 S.E.2d 7 (1987) ("Evidence of *prior acts* is generally not admissible. . . ."); *State v. Bright,* 323 S.C. 221, 473 S.E.2d 851 (Ct.App.1996) ("conviction must be based on proof of the offense for which [defendant] is accused, rather than *prior immoral acts* ").

In any event, even if *Lyle* were inapplicable, the evidence would still fall under the more general rule against attacking a defendant's character. *See, e.g., Mitchell,* 298 S.C. at 186, 379 S.E.2d at 123; *State v. McElveen,* 280 S.C. 325, 313 S.E.2d 298 (1984). Because we find the evidence would be inadmissible under either standard, the issue of whether this is evidence of a prior bad act or merely reflects on his character is largely academic. A more interesting issue would be whether the same exceptions noted in *Lyle* would apply to the general character rule, and thus allow into admission evidence attacking a person's character (but not evidence of a prior crime or bad act) if the State can show it is not being offered as propensity evidence but as probative to some other issue. Again, we need not reach this issue here because we find this evidence inadmissible under the exceptions advanced by the State.

**12.** We also found the evidence probative of a common scheme or plan.

sexual gratification. In *Smith*, the Ohio Court of Appeals rejected a similar argument that evidence of other sexual misconduct was admissible to show motive in committing the charged sex crime:

> [T]he motive for the alleged crimes involved in the present case [is] apparent. A person commits or attempts to commit [a sexual offense] for the obvious motive of sexual gratification. Since motive can not be deemed to have been a material issue at [defendant's] trial, "other acts" testimony was not admissible to prove this matter.
>
> ... While the acts of which the defendant was accused would certainly be viewed as perverted and depraved according to most views, the motive and intent of the alleged action remain, nevertheless, those of sexual gratification. That fact is apparent from the charges and is not a material issue. Evidence of other crimes, wrongs, or acts may not be introduced to prove his motive or intent in committing the operative acts of the offenses alleged.

617 N.E.2d at 1172–73 (internal citations omitted).[13]

▬ Somewhat similar reasoning has been applied regarding the issue of intent. "In the trial of sex offenses, extrinsic evidence of intent is admissible only in those cases where there is no challenge to the occurrence of the physical contact itself, but the intent of the actor is at issue because the nature of the contact is subject to varying interpretations." *Bagarozy*, 522 N.Y.S.2d at 854 (finding intent not an issue in case where defendant consistently denied any sexual contact with accusers). *See also State v. Tizard*, 897 S.W.2d 732, 744 (Tenn.Crim.App.1994) (evidence of sexually explicit videotapes and booklet, found in defendant's home, not probative of intent: "[T]o the extent that the ultimate inference sought to be drawn by the state, i.e., the defendant's intent to commit a sexual battery upon the victim, must be derived from initial

---

13. *Johnson* is even more readily distinguishable. That case also involved the admission of evidence of a prior murder. We held evidence the defendant had murdered someone and hidden the body in the vehicle he was driving tended to establish his motive for killing a state trooper who stopped him for a driving violation. 306 S.C. at 125, 410 S.E.2d at 551. The evidence was not admitted to show that because the defendant had killed before, he was a "killer" and in shooting the state trooper was merely acting in conformity with this characteristic.

inferences about the defendant's character traits circumstantially drawn from the questioned evidence, such evidence's probative value on the ultimate inference is greatly attenuated"). *Cf. State v. Millar,* 127 Or.App. 76, 871 P.2d 482 (1994) (evidence defendant possessed pornographic magazine of young girls probative of intent where defendant admitted placing hand down victim's pants but claimed his intent was to retrieve a toy, not sexual contact).

Here, Petitioner denied any sexual contact with the victim, making it highly questionable whether the element of intent was a material issue in the case. We find the State's argument this evidence was relevant to show motive or intent is merely a cleverly disguised way of asserting Petitioner committed the crimes because he has a propensity to commit sexual offenses. *See Stokes,* 279 S.C. at 193, 304 S.E.2d at 815 (judge's instruction that evidence was being admitted to show the "inclination of the defendant to do that" was erroneous because "the rationale for excluding evidence of prior 'bad acts' is to prevent the jury from considering an accused's inclinations rather than his actual conduct in the incident before the court").[14]

■ Equally unpersuasive is the State's argument the evidence was admissible as part of the *res gestae*. *See State v. Hough,* 325 S.C. 88, 480 S.E.2d 77 (1997) ("One of the accepted bases for the admissibility of evidence of other crimes arises

---

14. We find the common scheme or plan argument patently without merit. There was absolutely no allegation Petitioner molested another person. We also find unpersuasive the State's argument the evidence was admissible because it corroborated the expert witness's testimony regarding pedophile characteristics. While both the expert testimony and the evidence tended to prove the State's theory Petitioner was a pedophile, the latter did not corroborate the former. "Corroborate" is defined as "[t]o strengthen; to add weight or credibility to a thing by additional and confirming facts or evidence." "Corroborating evidence" is defined as "[e]vidence supplementary to that already given and tending to strengthen or confirm it. Additional evidence of a different character *to the same point*." Black's Law Dictionary 344 (6th ed. 1990) (emphasis added).

The expert's testimony was limited to describing general pedophile characteristics. The contested evidence went to whether Petitioner was a pedophile, a point never addressed by the expert. The contested evidence would not have corroborated the expert's testimony unless the expert testified she thought Petitioner was a pedophile.

when such evidence furnishes part of the context of the crime or is necessary to a full presentation of the case"). We find this evidence was not necessary to provide a complete picture of the crime or the context in which it occurred. *See State v. Lachterman,* 812 S.W.2d 759, 767 (Mo.Ct.App.1991), *overruled on other grounds, State v. Bernard,* 849 S.W.2d 10 (Mo.1993) ("complete picture" exception "seldom has application in child sexual abuse cases").

In *State v. Melcher,* 140 N.H. 823, 678 A.2d 146 (1996), the defendant challenged the admission of evidence of prior bad acts he allegedly committed with the victim. The New Hampshire Supreme Court noted that in analyzing whether evidence is relevant under Rule 404(b),[15] it "must tend to prove or disprove an issue actually in dispute, *without relying upon forbidden inferences of predisposition, character, or propensity. In other words, no link in the chain of inferences justifying relevance can be derived from the prior conduct's tendency to show character or disposition.*" *Id.* 678 A.2d at 149 (internal citations omitted) (emphasis supplied).

*Melcher* first rejected the argument the evidence was relevant to show a common scheme or plan, stating, "For prior sexual misconduct to be relevant to show that the defendant had a plan, the mutual dependence between the prior conduct and the charged act still must be divorced from any actual or implicit reliance on the defendant's character." *Id.* at 150. It then rejected the argument the evidence was relevant to show the context in which the crime occurred (i.e. *"res gestae"*), finding the term "context" to be "merely a synonym for propensity."

> To infer from this [evidence] ... an understanding of how the charged act could have occurred, we must necessarily assume that the defendant acted on the occasion of the charged act in conformity with his prior conduct; this "assumption is the inescapable link between the charged and uncharged crimes." When, in this manner, an assumption based upon the defendant's propensity toward certain

---

**15.** Rule 404(b) of the New Hampshire Rules of Evidence is substantially similar to SCRE 404(b), *see supra* note 7, and contains the same general exceptions enunciated in *Lyle.*

action is the essential connection in the inferential chain supporting relevance, the evidence is inadmissible. . . .

*Id.* (internal citations omitted). We find this reasoning applicable here: the evidence is only relevant to show the "context" of the crime when the assumption is made that Petitioner was acting in conformity with the character trait of being a pedophile. Again, this argument is but another cleverly disguised way of getting impermissible character evidence before the jury.[16]

---

**16.** In spite of the ban on character or propensity evidence, some states have nonetheless admitted evidence of collateral sexual crimes or sexual bad acts in sex offense cases, carving out specific exceptions they variously term "lustful disposition," "depraved sexual instinct," or the like. *See. e.g., State v. Roscoe,* 184 Ariz. 484, 910 P.2d 635 (en banc), *cert. denied,* —— U.S. ——, 117 S.Ct. 150, 136 L.Ed.2d 96 (1996) (recognizing specific exception to general rule disallowing evidence of other bad acts to show bad character when acts involve "sexual aberration" to show propensity to commit a similar crime); *Caldwell v. State,* 263 Ga. 560, 436 S.E.2d 488, 492 (1993) (allowing admission of four adult movies found in defendant's apartment because it showed defendant's "bent of mind toward the sexual activity with which he [is] charged and his lustful disposition," regardless of whether it also incidentally reflected on character); *State v. Chapman,* 683 So.2d 1236, 1240 (La.Ct.App.1996), *cert. denied,* 700 So.2d 505 (La.1997) (pornographic pictures of teenagers admissible to demonstrate defendant's "unnatural interest in young females"); *Mitchell v. State,* 539 So.2d 1366 (Miss.1989) (evidence of other sexual relations between defendant and victim admissible to show lustful, lascivious disposition toward that particular victim); *Findley v. State,* 94 Nev. 212, 577 P.2d 867, 868 (1978) (admitting evidence showing possession of "specific emotional propensity for sexual aberration"); *State v. Reeder,* 105 N.C.App. 343, 413 S.E.2d 580, *cert. denied,* 331 N.C. 290, 417 S.E.2d 68 (1992) (evidence of prior sexual offenses admissible to show defendant's "unnatural lust, intent or state of mind"); *State v. Edward Charles L.,* 183 W.Va. 641, 398 S.E.2d 123 (1990).

South Carolina has not recognized such an exception, nor are we inclined to do so. Other states have similarly resisted this urge to make exception for one class of crimes. "Given the emotionally charged nature of the crime, there exists a natural temptation to regard Rule 404(b) differently when a defendant has been indicted for sexual assault. . . . But the fairness and due process concerns underlying Rule 404(b) are no less pertinent in sexual assault cases. . . ." *Melcher,* 678 A.2d at 149. *See also Tizard,* 897 S.W.2d at 744 (noting Tennessee's refusal to adopt a sex crime or acts exception); *State v. Bernard,* 849 S.W.2d 10 (Mo.1993) (en banc) (refusing to adopt a "depraved sexual instincts" exception).

In *Lannan v. State,* the Supreme Court of Indiana decided to abandon its "depraved sexual instinct" exception in favor of a more general

■ "A necessary corollary to the presumption of innocence is that a defendant must be tried for what he did, not for who he is." *Melcher*, 678 A.2d at 151. We hold the evidence in this case was inadmissible as improper character evidence.

## II. Police Statements

■ Petitioner argues post-arrest statements he made to police were erroneously admitted into evidence. We agree.[17]

At trial, Sergeant Belk testified when he and Detective Frazier went to interview Petitioner, he requested that Sergeant Belk come back another time without Detective Frazier because he was uncomfortable around adult women. When Belk came back later alone, Petitioner told him he had fantasies about children. Detective Frazier testified to essentially the same thing. No written statement was admitted into evidence. The trial judge overruled Petitioner's objection to any testimony "concerning any fantasies or likes or dislikes of females."

■ Generally, only those parts of a confession or statement made to police which are relevant and material to the crime charged should be received into evidence. *State v. Gamble*, 247 S.C. 214, 146 S.E.2d 709 (1966), *overruled on other grounds, State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991). For the same reasons as discussed *supra* in Issue I,

---

analysis under FRE 404(b). 600 N.E.2d 1334 (Ind.1992) (noting approximately twenty other states have or have had such exceptions). In doing so, it noted the traditional rationale for this type of exception is twofold: (1) that "acts showing a perverted sexual instinct are circumstances which ... may have a tendency to connect an accused with a crime of that character;" and (2) the need to bolster victim testimony "which describe[s] acts which would otherwise seem improbable standing alone." *Id.* at 1335. While assuming recidivism among sexual offenders may be high, it pointed out that equally high was recidivism among, for example, drug offenders. Yet no exception for character evidence was carved out for drug offenses. Further, it found the need to bolster victim testimony not as great because of our current, "more jaded" society's willingness to believe sexual offenses occur. Thus, it held evidence of prior sexual misconduct would only be admissible if it fit into one of the *"Lyle"*-type exceptions under the general rule prohibiting such evidence.

17. The Court of Appeals did not rule on this issue, although it was raised to them and Appellant argued it in his petition for rehearing.

we find Petitioner's general sexual attitudes were not relevant or material to the crime charged because they were admitted to show character. *See, e.g., Stevens v. State,* 748 P.2d 771, 774 (Alaska Ct.App.1988) (error, in trial for attempted sexual abuse of a minor, in admitting defendant's statements to police regarding his sexual fantasies about homosexuality and children because it was "relevant, if at all, only to show [defendant's] propensity to commit a sex crime"); *Erickson v. State,* 565 So.2d 328, 330–31 (Fla.Dist.Ct.App.1990), *cert. denied,* 576 So.2d 286 (Fla.1991) (error in admitting defendant's statements to psychiatrist regarding sexual fantasies about female children). Therefore, the judge committed error in allowing the jury to hear these statements.

█ For the foregoing reasons, we find it was error to admit the above evidence and testimony.[18] The opinion of the Court of Appeals affirming Petitioner's conviction is therefore reversed and the case is hereby remanded for a new trial.

**REVERSED AND REMANDED.**

BURNETT, J., GEORGE T. GREGORY Jr., and THOMAS W. COOPER Jr., Acting Associate Justices, concur.

MOORE, Acting C.J., dissenting in separate opinion.

MOORE, Acting Chief Justice:

I respectfully dissent. I would affirm petitioner's convictions.

Unlike the majority, I would not summarily reject the State's argument that consideration of the admission of the evidence is procedurally barred. I would hold petitioner did not preserve his objections to the items introduced into evidence. The majority relies upon *State v. Ross,* 272 S.C. 56, 249 S.E.2d 159 (1978), which holds an objection to a line of

---

18. Under the circumstances of this case, we cannot find these errors harmless beyond a reasonable doubt, as would be required in order to affirm Petitioner's conviction. Whether the admission of this evidence subsequently affected defendant's trial strategy and/or testimony is not for this Court to opine. *See, e.g., State v. Smith,* 309 S.C. 48, 419 S.E.2d 816 (1992); *State v. Singleton,* 303 S.C. 313, 400 S.E.2d 487 (1991) (refusing to find error harmless where there was not overwhelming evidence of guilt).

questioning is sufficient to object to a particular question. In my opinion, the separate and distinct introduction of several items is entirely different.

During trial, petitioner objected to the introduction of the homemade videotapes described in the majority opinion and the trial judge overruled petitioner's objection by stating he was "going to allow the subject of theses tapes to be mentioned without introducing the tapes." Petitioner also objected to a photo album containing pictures from magazines of young girls, some dressed in bathing suits, underwear, and gymnastic clothes. Further, petitioner objected to the statements which he made to the police.[1]

Petitioner, however, did not object to the introduction of his wallet containing his Punky Brewster fan club membership, a photograph of Punky Brewster which had been displayed in his room, and numerous photographs of young girls found in his room. A police officer also testified, without objection, that numerous other items of the same type were seized which were not introduced into evidence.

Here, the challenged evidence goes to the same issue regarding petitioner's character as the evidence admitted without objection. *State v. Sebasky*, 547 N.W.2d 93 (Minn.App. 1996) (although bulletins from organization advocating sexual relationships between men and boys should not have been admitted, defendant was not prejudiced when other sexually related evidence—e.g. homosexual magazines; dildos; and four sexually explicit videos of homosexuals—was introduced). Accordingly, I would hold the admission of the videotapes, photo album, and his statements was harmless because they are merely cumulative to other evidence admitted without objection. *State v. Rochester*, 301 S.C. 196, 391 S.E.2d 244 (1990).

Further, petitioner's own testimony is much more damning than the evidence introduced by the State. "Pedophile" is

---

1. Petitioner objected to the introduction of the *Grimm's Complete Fairy Tales* without stating any ground. Thus, this objection is not preserved. "A general objection which does not specify the particular ground on which the objection is based is insufficient to preserve a question for review." *State v. Bailey*, 253 S.C. 304, 170 S.E.2d 376 (1969) (trial judge commits no error in overruling general objection).

defined in the majority opinion as someone who has a "sexual perversion in which children are the preferred sex object." Petitioner's own testimony establishes he is a pedophile.

Petitioner testified on direct examination he had told the police officers he likes young girls. He further stated, "My intention was to say that I like young girls and, yes, Amber could possibly be one of those. I didn't mention that Amber was one of those. I said—I told him when I was telling him about where my tapes and these pictures were, I was telling him that I do like young girls. That's my problem...." Referring to the videotapes which he possessed, petitioner stated that the subject of the tapes were young girls ranging in age from about 8 or 9 up to 22 or 23. He further stated he did not like 18 year-old-girls because he considered that grownup.

On direct examination, he also testified that "when you get down to around four or five, three years old, you kind of have to force yourself to fantasize about them. So, you don't even fantasize about them often...." When asked on direct examination if he had any thoughts of doing anything to Amber, he replied: "No. I tried one time. I started one time. A thought come into my mind and I was going to let it go like I do any other time, but the first thing that came into my mind was her mother's face, and there was no more to it...."

On cross-examination, the solicitor asked petitioner about a videotape he had introduced of his bedroom. Petitioner stated his pictures of "the little girls" and Punky Brewster were missing. He then elaborated and stated one picture of a young girl was not displayed in the tape and he used it for "sexual purposes" and his "sexual desire for [her]." Later, during cross-examination he admitted that the album was for sexual fantasies. In fact, he admitted "almost 99 percent of everything besides [Punky Brewster] as far as theses pictures and things, that is sexual." He stated only the *Grimm's Complete Fairy Tales* book and the "Save the Children" advertisement were accidental or coincidental.

I also note petitioner never objected to the expert witness's testimony regarding the general characteristics of a pedophile. Further, there was additional evidence about petitioner's behavior introduced, without objection, which when looked at

along with the expert's testimony implied petitioner was a pedophile. Amber's mother testified without objection that petitioner gave Amber numerous gifts, including candy, an umbrella, a lunch box, a nightgown, stuffed animals, and cartoon tapes.

Accordingly, I would affirm.