21148

WILBUR SMITH AND ASSOCIATES, Plaintiff, v. NATIONAL BANK OF SOUTH CAROLINA, as Executor of the Estate of J. Willcox DesChamps, and James Cuttino, Jr., individually, and d/b/a James Cuttino & Sons, Realtors, Defendant, of whom National Bank of South Carolina, as Executor of the Estate of J. Willcox DesChamps, is the Appellant, and James Cuttino, Jr., individually and d/b/a James Cuttino & Sons, Realtors, is the Respondent.

(263 S. E. (2d) 643)

*John D. Lee, Jr.,* of *Lee, Moise, Myers & Erter,* Sumter, *for appellant.*

*M. M. Weinberg, Jr.,* of *Weinberg, Warner, Brown & McDougall,* Sumter, *for respondent.*

February 12, 1980.

LITTLEJOHN, Justice:

This appeal is from the order of the circuit court directing that James Cuttino & Sons be paid a real estate commission

from the sale of real property by the executor of the estate of J. Willcox DesChamps. The executor appeals. We affirm.

DesChamps owned approximately 650 acres of undeveloped land in Sumter County. In March of 1973, DesChamps, then 80 years of age, entered into a contract with Cuttino. The printed form contract was labeled an "Exclusive Listing Agreement" and provided that, in consideration of Cuttino agreeing to advertise and make all reasonable efforts to sell the property, DesChamps authorized Cuttino exclusively to sell the land. The listing was for 15 years and the sale price was "to be mutually agreed upon after Wilbur Smith & Associates Study and recommendations are completed." The printed contract included a typed-in provision: "Above contract binding on heirs and assigns."

In July of 1974, after the Wilbur Smith feasibility study was complete, DesChamps executed a second exclusive listing agreement,[1] using the same form. This set the sale price at $1.5 million and reduced the term to 60 months. While both instruments provided for a 10% commission to Cuttino upon the sale of the property, the second made no reference to "heirs and assigns."

Upon DesChamps' death in December of 1976, the National Bank of South Carolina qualified as executor of the estate. The property was sold by the executor in August of 1977, through another realtor, for $700,000. Cuttino consistently maintained he had an exclusive listing of the property, but he did not participate in this transaction in any manner.

Wilbur Smith and Associates brought this action against the executor and against Cuttino to recover for development work on the property, which included preparation of an elaborate brochure. In answering, Cuttino cross-claimed against the executor for the commission he claimed to be due because of the exclusive listing. The claim of Wilbur Smith was settled and the only remaining controversy was

---

[1] The first listing agreement was recorded; the second was not.

the matter of the commission as sought in the counterclaim against the Bank-Executor.

After a hearing, the trial judge, sitting without a jury, found that Cuttino had a valid exclusive listing and that since the property was sold during the period of the listing, a commission of $70,000 was due. We agree.

The executor contends that the second instrument is complete in its terms and replaced the first as the entire contract between the parties. However, a reading of the first instrument shows that a second instrument was contemplated and actually required before Cuttino could effect a sale. The sale price was "to be mutually agreed upon after Wilbur Smith & Associates Study and recommendations are completed." The second instrument was used to indicate the mutually agreed-upon sale price. Cuttino testified that this price was to be effective for a 60 month period, at which time the parties would reappraise the property.

The court is faced with two instruments which it must consider to determine the rights of the parties. The applicable rule of contract construction, as recently noted by this court, is:

"[W]here the instruments have not been executed simultaneously but relate to the same subject matter and have been entered into by the same parties, the transaction comprising the contract will be considered as a whole. This is true even though the transaction consumed more than one day; the date of the writings constituting such transaction is immaterial. Construing contemporaneous instruments together means simply that if there are any provisions in one instrument limiting, explaining, or otherwise affecting the provisions of another, they will be given effect between the parties so that the whole agreement as actually made may be effectuated." *Klutts Resort Realty, Inc. v. Down 'Round Development Corp.,* 268 S. C. 80, 232 S. E. (2d) 20, 24 (1977).

The two instruments must be read together to determine the whole agreement and intent of the parties. The second was supplementary to and not in lieu of the first.

The executor next asserts that even when the instruments are read together Cuttino is not entitled to a commission since the property was sold after DesChamps' death. Citing the fundamental rule that an agency relationship terminates at the death of the principal, the executor argues that the listing agreement was no longer valid after DesChamps' death. The language purporting to bind heirs and assigns is argued to be mere surplusage, which can have no legal effect.

This court has said:

"The purpose of all rules of contract construction is to determine the parties' intentions. The courts, in attempting to ascertain this intention, will endeavor to determine the situation of the parties, as well as their purposes, at the time the contract was entered into. [Citation omitted.] The court should put itself, as best it can, in the same position occupied by the parties when they made the contract. In doing so, the court is able to avail itself of the same light which the parties possessed when the agreement was entered into so that it may judge the meaning of the words and the correct application of the language." *Klutts Resort Realty, Inc. v. Down 'Round Development Corp., supra.*

Applying this rationale, we hold that the contract was valid and binding on DesChamps' heirs and assigns and the executor.

Counsel for the executor admits in oral argument that it is legally permissible to draw a listing contract which would bind the heirs and assigns of a property owner to carry out a sale procured by a realtor, but argues that the contract here involved simply did not accomplish that result. It is a cardinal rule of contract construction, as cited in *Klutts,* that the court strives to carry out the intent of the parties.

In construing a contract, meaning must be attached to all of the verbiage. What significance should be given to the clause, "Above contract binding on heirs and assigns"? The executor argues that these words have no meaning and should be ignored. We think, however, that the purpose of these words, which were not a part of the printed form but were added with a typewriter, was to continue the listing for a period of 15 years, which was later reduced to 60 months by agreement.

An Ordinary real estate listing agency agreement would normally end upon the death of the property owner, but this contract is not an ordinary listing agreement entered into under ordinary circumstances. The label given to the contract is not conclusive of its legal nature. This is a contract between an 80 year-old-man, who desired to develop and promote the sale of an unusually large tract. and a realtor, who desired to protect his projected investment of time and money. DesChamps wanted to develop his property to its best use, but realized that such an undertaking would require a long period of time, possibly reaching beyond the life span of one 80 years old. Cuttino wanted to list the property, but could not risk an extensive investment of his resources under an ordinary listing agreement. The 24-page color brochure in evidence prepared by Wilbur Smith with the cooperation of Cuttino depicts the potential of this land for residences, golf course, equestrian center, etc. It is a development plan designed to attract investors. The approach to marketing this property was totally different from the ordinary listing of a house and lot or a farm for sale. The brochure completely negates any idea that the parties treated the contract for sale as an ordinary listing agreement. Each party supplied ample consideration for the contract. DesChamps promised an exclusive listing for a term of years; Cuttino promised to use his best efforts in the promotion and sale of the property. Accordingly, to effectuate their desires and intent, they agreed the contract would bind DesChamps' heirs and assigns. This was a valid contractual provision which should be given full force and effect.

During DesChamps' life and after his death, Cuttino fulfilled his responsibilities under the contract. He did extensive work from February 6, 1974, to February 22, 1977, toward the development and sale of the property, making numerous trips to Columbia to confer with Wilbur Smith & Associates, placing numerous advertisements concerning the property, and showing the property to several prospective purchasers. In fact, a proposed land option was presented to DesChamps prior to his death and resubmitted to the executor following his death. The executor was aware of Cuttino's exclusive contract with DesChamps but chose to ignore it and sell the land, using the services of another realtor.

The argument that DesChamps' heirs and assigns could not be bound because Cuttino's were not is not valid. There is no such thing as committing ones heirs and assigns to perform personal service. To bind ones heirs and assigns as relates to use and/or disposition of real property is routine. The executor took charge of the property subject to its burden and was bound the same as any "heirs and assigns."

Under the express terms of the contract, Cuttino was authorized "exclusively to sell" the property. Thus, this can be termed an "exclusive sales contract." Courts "have interpreted an exclusive sales contract to be an agreement that gives the realtor sole right to sell the property, and a commission must be paid even if the owner sells the land." *Dorman Realty & Ins. Co., Inc. v. Stalvey,* 264 S. C. 94, 212 S. E. (2d) 591 (1975).

Under the terms of the exclusive sale provision of the contract, Cuttino was entitled to a commission of 10% upon the sale. The judge was correct in finding that Cuttino should receive the $70,000 commission due under the contract.

This is an action at law, tried by the judge without a jury. Our scope of review is limited to a determination of whether there is any evidence to support his findings. *Townes Asso-*

*ciates, Ltd. v. City of Greenville,* 266 S. C. 81, 221 S. E. (2d) 773 1976). The judge's finding that Cuttino had a contract binding on the executor is supported by the evidence, and his order is

Affirmed.

LEWIS, C. J., NESS and GREGORY, JJ., and JOSEPH R. Moss, Acting Associate Justice, concur.