697 S.E.2d 684

**Tammy Coleman MARO, Appellant,**

v.

**James Neil LEWIS, Respondent.**

**No. 4715.**

Court of Appeals of South Carolina.

Heard Feb. 17, 2010.
Decided July 28, 2010.

218

Natasha M. Hanna, of Myrtle Beach, for Appellant.

Robert J. Moran, of Murrells Inlet, for Respondent.

LOCKEMY, J.

In this breach of contract action, Tammy Maro appeals the trial court's grant of James Lewis's motion for directed verdict. Maro argues the trial court erred in granting the motion because she proved all elements of the breach of contract and breach of contract accompanied by fraud causes of action.

Further, Maro argues the trial court erred in allowing certain documents into evidence and allowing questioning regarding the documents. We reverse and remand.

## FACTS

In 2005, Lewis and his ex-wife owned a parcel of land on Pawleys Island. The land was approximately 1.7 acres of commercial property where a gas station, convenience store, and other businesses were located at the time. Lewis wished to sell his property and contacted Maro, a real estate agent, for assistance in 2005.

Maro and Lewis entered into an exclusive right to sell real estate agreement on May 11, 2005. In paragraph 7, section J of the agreement, Maro agreed to sell Lewis's property, and Lewis, as seller, agreed "[n]ot to deal directly with prospective buyers of this property during the period of agency and shall refer any inquiries received directly and immediately to [Maro]." Maro testified Lewis signed the contract after she discussed all five pages with him at his store.

After both parties signed the contract, Maro testified Lewis informed her he had some exclusions to the contract or "some people that he had been talking with about purchasing the property previous to [her] contract." Maro said this would not be a problem, but according to Maro, Lewis never provided her with those names. Thereafter, Lewis and Maro entered into a second contract dated May 13, 2005. The terms of the second contract were nearly identical to the contract signed May 11 with the exception of one clause stating:

> OTHER TERMS AND CONDITIONS: Broker will advertise the property for sale and will have the term of the listing to have the property sold. Should a buyer become available that was listed as an owner contact—Seller will have the right to sell to them after the contract expires and there will be no commission charge. Names are on this agreement.

However, the May 13, 2005 agreement did not list any names as Lewis's previous contacts. Maro testified she attempted to obtain the names of Lewis's previous contacts, but he never gave her specific names and was vague when asked to provide

them. Lewis had still failed to provide Maro with names when he signed the second contract on May 24, 2005.[1]

Maro attempted to sell the property, and she advertised the property in several newspapers as well as on the internet through commercial listing services. However, Maro was unsuccessful in her attempts, and her exclusive right to sell period expired on November 13, 2005. The contract contained a ninety-day extension period. Specifically, the ninety-day extension clause stated:

> If the property is sold within 90 days of the expiration or termination of this Agreement (which shall be the "protection period") to a Buyer to whom the property was shown by Owner, Broker, another broker, or any other person or firm during the term of this Agreement, Broker's full fee shall be payable by Owner. The protection period shall be terminated if Owner enters into a listing agreement with another broker during the protection period.

Thus, the protection period continued through February 13, 2006. Maro attempted to sell the property to no avail and spent more than $10,000 in her endeavor.

Ultimately, Peggy Wheeler–Cribb purchased the property from Lewis. Wheeler–Cribb negotiated the purchase of the property directly with Lewis and entered into three contracts with him for its purchase. Without involving Maro, Lewis and Wheeler–Cribb entered into a contract on August 28, 2005. Wheeler–Cribb paid earnest money on the contract. Negotiations fell through because several contingencies to the contract did not occur. Thereafter, Wheeler–Cribb and Lewis entered into a second contract for the purchase of the property in December of 2005, and again the contract did not close. Finally, Wheeler–Cribb and Lewis entered into a third contract in April 2006, which closed in May 2006.

On March 22, 2006, Maro brought an action for breach of contract and breach of contract accompanied by fraudulent intent against Lewis. Lewis answered and made several counterclaims. During the trial, Maro maintained Lewis breached the real estate contract even though he sold his property after the contract expired. At the conclusion of

---

1. We note the effective date of the second right to sell agreement is different from the date that Maro signed the agreement.

Maro's case, the trial court directed a verdict for both causes of action in Lewis's favor.[2] The trial court reasoned: "[I]f I accept [Maro's] position . . . [Lewis] would be bound for the rest of his life because he had some preliminary conversation in March of 2005. And that simply can't be the law." Additionally, the trial court stated: "I don't see any way in the world as a matter of law that I can give her a commission of $120,000.00 on a piece of property that sold within seven days [and] one year later; and the contract expired six months earlier; and certainly [ninety] days." The trial court believed Wheeler–Cribb had no plans to purchase the property until several issues concerning the property were resolved including bank financing and zoning. In summation, the trial court held Maro did not meet the conditions of the contract in that the property was sold on May 2, 2006, nearly one year after the initial contract, and far beyond the ninety-day protection period. This appeal followed.

## STANDARD OF REVIEW

"In deciding a motion for directed verdict, the evidence and all reasonable inferences must be viewed in the light most favorable to the nonmoving party." *Minter v. GOCT, Inc.*, 322 S.C. 525, 527, 473 S.E.2d 67, 69 (Ct.App.1996). "If more than one inference can be drawn from the evidence, the case must be submitted to the jury." *Id.* "When considering directed verdict motions, neither the trial court nor the appellate court has authority to decide credibility issues or to resolve conflicts in the testimony or evidence." *Harvey v. Strickland,* 350 S.C. 303, 308, 566 S.E.2d 529, 532 (2002).

## LAW/ANALYSIS

### I. Directed Verdicts on Causes of Actions

Maro argues the trial court erred in granting Lewis's motions for directed verdicts on her causes of action for breach of contract and breach of contract accompanied by a fraudulent act. Specifically, she maintains she met her bur-

---

2. The record does not contain a final written order of the court addressing the directed verdict motions. Instead, the record contains a discussion regarding the motions.

den as a plaintiff in the action by presenting evidence on all elements for both causes of action.

In reply, Lewis admits that a contract existed between Maro and himself. Further, Lewis admits he breached the contract. However, Lewis maintains that not every breach of contract cause of action entitles the non-breaching party to damages. Specifically, Lewis admits being in contact with the ultimate purchaser of the property, Wheeler–Cribb, but he argues Maro would only be entitled to damages if he entered into a contract within the contract term or the ninety-day protection period. In this case, Lewis contends Wheeler–Cribb was not a ready buyer of the property on October 2, 2005, thereby precluding Maro from receiving a commission per the parties' contract. To determine whether Maro presented evidence that met her burden of proof, we must examine the evidence presented and the contracts at issue.

## A. Breach of Contract

"This being an action for the breach of contract, the burden was upon the [plaintiff] to prove the contract, its breach, and the damages caused by such breach." *Fuller v. E. Fire & Cas. Ins. Co.*, 240 S.C. 75, 89, 124 S.E.2d 602, 610 (1962). "The general rule is that for a breach of contract the defendant is liable for whatever damages follow as a natural consequence and a proximate result of such breach." *Id.* "The purpose of an award of damages for breach of contract is to put the plaintiff in as good a position as he would have been in if the contract had been performed." *Minter v. GOCT, Inc.*, 322 S.C. 525, 528, 473 S.E.2d 67, 70 (Ct.App.1996). "The proper measure of compensation is the loss actually suffered by the plaintiff as a result of the breach." *Id.*

Here, Lewis admits to entering into an enforceable contract with Maro. Further, he admits breaching the contract by not fulfilling several of his obligations as seller. Therefore, at this juncture, we must determine whether Maro presented sufficient evidence Lewis's breach proximately caused her to lose commission and money she spent attempting to sell the property. Viewing the evidence in the light most favorable to Maro's breach of contract claim, we find the trial court erred

in granting Lewis's motion for directed verdict for two specific reasons.

First, the record contains conflicting evidence regarding the number of potential buyers who inquired about the property to Lewis during the course and scope of his contract with Maro. This is a factual conflict in both parties' stories that clearly lies within the jury's domain. A jury could infer from the evidence that Maro could have sold the property had Lewis disclosed the information about the potential buyers and involved Maro in the negotiations.

Under the second scenario, a jury could infer that Maro is entitled to expenses, commission, or both pursuant to the terms of the contract. We find some evidence demonstrates Lewis's duty, his breach, and that the breach proximately caused Maro's damages. First, Lewis owed a duty to disclose potential inquiries regarding the property to Maro. Second, he breached this duty by failing to notify Maro of at least two inquiries. Finally, Lewis entered into a contract with Wheeler–Cribb on August 27, 2005, and again in December 2005. Though these sales contracts never closed, Wheeler–Cribb was the ultimate purchaser of the property. Further, the terms of the exclusive right to sell agreement do not require the contracts to close. Rather, in order for Maro to earn her commission, the exclusive right to sell agreement only requires a contract be entered into between Lewis and a third party. We find one could construe entering into a contract with the purchaser of the property as breaching the conditions of the exclusive listing agreement between Lewis and Maro. Accordingly, we find the record includes sufficient evidence to survive the directed verdict motion, and the trial court should have submitted the case to the jury.

## B. Breach of Contract Accompanied by a Fraudulent Act

To recover for breach of contract accompanied by a fraudulent act, a plaintiff must establish (1) the contract was breached; (2) the breach was accomplished with a fraudulent intention; and (3) the breach was accompanied by a fraudulent act. *Minter*, 322 S.C. at 529–30, 473 S.E.2d at 70. "In an action for breach of contract accompanied by a fraudulent act,

the fraudulent act element is met by any act characterized by dishonesty in fact, unfair dealing, or the unlawful appropriation of another's property by design." *Perry v. Green*, 313 S.C. 250, 254, 437 S.E.2d 150, 152 (Ct.App.1993).

We find because the record contains some evidence of a breach of contract accompanied by a fraudulent act, the action should have survived a directed verdict motion. We have already addressed the elements for a breach of contract cause of action in the above section. Maro presented some evidence of both fraudulent intent and fraudulent action as well. A jury could find Lewis hid his negotiations from Maro and that Lewis hid these actions in an attempt to evade payment of a broker's commission. Therefore, we reverse the trial court's grant of Lewis's motion for directed verdict on the cause of action for breach of contract accompanied by a fraudulent act.

## II. Exclusive Right to Sell Agreement and Closing Date

Next, Maro argues the trial court erroneously concluded the contract must be valid, enforceable, and close during the term of the listing agreement or protection period before the commission is earned. Specifically, Maro argues paragraph 3(A) of the contract states the commission is due and payable when the contract is signed. Further, Maro maintains the three-sentence contract entered into by Lewis and Cribb–Wheeler was sufficient to trigger the broker's commission becoming due and payable. We agree.[3]

In *Wilbur Smith & Associates v. National Bank of South Carolina*, our supreme court affirmed a trial court's decision to award a broker commission when the executor of the estate completed the sale of the property. 274 S.C. 296, 263 S.E.2d 643 (1980). Specifically, the trial court found the broker was entitled to $70,000 in commission because of a valid exclusive listing contract and the property was sold during the listing period. *Id.* at 299, 263 S.E.2d at 644. In affirming the trial court's decision, the supreme court found realtors have the

---

**3.** We note Lewis's reliance on *Carolina Business Brokers v. Strickland*, 299 S.C. 237, 384 S.E.2d 72 (Ct.App.1989), and his assertion that *Strickland* is a persuasive decision, factually similar to this appeal. However, Lewis does not develop this argument, and in fact, the South Carolina Supreme Court reversed *Strickland*. *See Carolina Bus. Brokers v. Strickland*, 300 S.C. 492, 388 S.E.2d 815 (1990).

sole right to sell property under an "exclusive sales contract" and are entitled to commission even when the property owner sells the land. *Id.* at 302, 263 S.E.2d at 646. Therefore, pursuant to *Wilbur Smith,* Maro would be entitled to commission if Lewis sold the property during the time period expressed in the exclusive sales contract.

As Maro maintains, paragraph 3A of the exclusive right to sell agreement states the broker is entitled to commission "if Broker, Owner, another broker, or any other person or company produces a Buyer who is ready, willing, and able to purchase the property on the terms described above or on any terms acceptable to the Owner." Later in paragraph 3A, the contract provides:

> The broker fee shall be earned, due, and payable *when an agreement to purchase, option, exchange, lease or trade is signed by Owner.* However, if Owner shall fail or refuse to sell the described property for the price and terms set forth herein, or if Owner shall fail or refuse to complete the sale of such property under any written Agreement to Buy and Sell Real Estate to which Owner has agreed, Broker's full fee shall be due and payable by Owner.

(emphasis added).

Here, Maro presented evidence that Lewis sold the property to Wheeler–Cribb during the period of Maro's exclusive right to sell agreement. Even in his brief, Lewis states "Maro's strategy was to deny Lewis'[s] pre-existing relationship with Wheeler–Cribb, *focus on the first sales contract executed during the term of the listing contract,* and characterize each and every subsequent event as somehow compromising portions of the same contract of sale." (emphasis added). Per the parties' listing agreement, executing a contract for sale of the property during the listing period appears all that was necessary to secure Maro's commission. Therefore, we find a jury could have determined that she was entitled to commission. Accordingly, we hold the trial court erred in directing verdicts in favor of Lewis.

## III. Admission of Evidence

Maro argues the trial court erred by admitting certain evidence that was never produced to Maro, and that such

evidence was highly prejudicial and made Lewis's attorney a witness in the case. Because we reverse the trial court's decision to grant Lewis's motion for a directed verdict, we decline to address this argument. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

## CONCLUSION

We find the trial court erred in granting Lewis's motions for directed verdict. We find a jury could conclude from the evidence in the record that Maro proved all elements of her causes of action and therefore is entitled to damages. Because this conclusion will require a new trial, we decline to address the final issue. Accordingly, the decision of the trial court is

**REVERSED AND REMANDED.**

SHORT and KONDUROS, JJ., concur.