# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Allegro, Inc., Respondent,

v.

Emmett J. Scully, Synergetic, Inc., George C. Corbin and Yvonne Yarborough, Petitioners.

Appellate Case No. 2014-002055

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Richland County
L. Casey Manning, Circuit Court Judge

---

Opinion No. 27662
Heard November 18, 2015 – Filed August 24, 2016

---

## REVERSED

---

Amy L. Gaffney, of Gaffney Lewis & Edwards, LLC, and C. Mitchell Brown, William C. Wood, Jr., and Brian P. Crotty, all of Nelson Mullins Riley & Scarborough, LLP, all of Columbia, for Petitioners.

Richard J. Morgan and Robert L. Widener, both of McNair Law Firm, PA, of Columbia, for Respondent.

---

**JUSTICE HEARN:** This protracted litigation emanates from Emmitt Scully's departure from Allegro, Inc., a professional employer organization (PEO)[1], in order to form a competing PEO—Synergetic, Inc.—along with former Allegro employees, including Yvonne Yarborough. Allegro brought this suit against Scully, Yarborough, Synergetic, and George Corbin—a former client of Allegro who also performed some accounting services for the company (collectively Petitioners). The jury returned a verdict in favor of Allegro on all claims and awarded it $1.76 million in actual damages and $250,000 in punitive damages. Petitioners moved for, *inter alia*, JNOV on all causes of action, which the trial court denied. The court of appeals reversed and remanded for a new trial, and we therefore address only whether the claims for civil conspiracy, breach of contract, and breach of contract accompanied by a fraudulent act should be included in the remand. We find those causes of action should never have been submitted to the jury and therefore hold the court of appeals erred in affirming the trial court's denial of JNOV as to those claims.

## FACTUAL/PROCEDURAL BACKGROUND

After working within the industry for several years, Mary Etta McCarthy decided to develop a PEO, and in the summer of 1997 she began looking for a partner with more human resources experience to join her in this endeavor. She eventually entered into a partnership agreement with Scully and formed Allegro. Pursuant to the agreement, Scully would ultimately have forty-nine shares of the partnership and McCarthy would have fifty-one. Scully acted as Allegro's president, supervising the day-to-day operations, working with employees, and keeping up the client relationships. During that time, Scully became acquainted with Corbin, who Allegro retained for outside accounting and CPA services. Corbin prepared the books and performed Allegro's annual audits for two or three years.

After some time, the relationship soured and Scully began considering different options to sever his ties to McCarthy, all of which he discussed with Corbin. To aid Scully in his decision making, Corbin drafted a letter identifying Scully's different options—buying out McCarthy, McCarthy buying his shares, or starting a new company. In the spring of 2003, Scully informed McCarthy he wanted to run Allegro on his own and therefore would like to buy out her shares.

---

[1] PEOs provide services such as human resources, employee benefits, payroll, and workers' compensation to businesses as a means of outsourcing that area of management.

After almost a year of being unable to reach a resolution on the price of the shares, Scully tendered his resignation. Although McCarthy initially agreed to accept Scully's offer to purchase her shares, she quickly changed her mind the following week when Scully was away on business. When Scully returned from his trip, McCarthy met him at the office with a letter accepting his resignation and immediately requested the keys to the company car and the return of any company property. McCarthy had the police waiting in an adjacent room in the event troubled occurred and ordered a cab to take Scully home.

Over the course of the following week, Scully began visiting Allegro's customers. He ultimately established his new company, Synergetic, and two employees from Allegro, Yarborough and Lisa Milliken, joined him.

Allegro filed this suit on April 2004 against Synergetic, Scully, Corbin, and Yarborough, alleging thirteen causes of action. The same day, Allegro filed a motion for a temporary injunction to enjoin Synergetic, Scully, and Yarborough from soliciting any of its clients. The injunction was granted in a thorough ten-page order. The case proceeded to trial.

At the close of Allegro's case as well as at the close of all the evidence, both parties moved for directed verdict. The trial court denied the motions and submitted the case to the jury. The verdict form sent to the jury listed eleven causes of action and provided the jury a blank space to include the damages next to each action.[2]

The jury returned a verdict for Allegro on all causes of action, awarding $160,000 in actual damages on each claim. It also awarded $75,000 in punitive damages on the claim for breach of loyalty against Yarborough, and $175,000 in punitive damages for the civil conspiracy claim.

---

[2] The causes submitted to the jury were: breach of duty of loyalty (Scully and Yarborough), violation of Section 33-8-420(a) of the South Carolina Code (2006) (Scully), breach of fiduciary duty (Scully), breach of contract accompanied by a fraudulent act (Scully), breach of contract (Scully), fraud (Scully), gross negligence (Scully), negligent misrepresentation (Scully), violation of Section 33-8-310 of the South Carolina Code (2006) (Scully), and civil conspiracy (Scully, Corbin, Yarborough). Synergetic was not included in any cause of action submitted to the jury.

Thereafter, Petitioners moved for election of remedies, judgment notwithstanding the verdict (JNOV) on all causes of action, new trial, and new trial nisi remittitur. The trial court denied all the motions in an order dated July 9, 2008, basing much of its conclusions on preservation grounds. Specifically, the trial court found Petitioners' arguments for JNOV were not preserved as to the claims for breach of duty of loyalty against Scully and Yarborough, breach of duty of good faith against Scully, breach of fiduciary duty against Scully, and conflict of interest by Scully because those issues had not been challenged at the directed verdict stage.

Addressing the remaining claims, the trial court held, *inter alia*, the limited ground upon which the breach of contract claim had been challenged was whether there was any evidence of the existence of a contract, not whether Allegro had failed to prove the terms of the contract; accordingly, it addressed only the existence and concluded there was sufficient evidence to overcome a JNOV motion. On the breach of contract accompanied by a fraudulent act claim, the trial court also found Petitioners had never alleged there was no evidence of a fraudulent act and were therefore precluded from doing so at the JNOV stage. As to the civil conspiracy claim, the trial court found Petitioners had failed to argue a lack of evidence of special damages in their directed verdict motion and therefore could not argue that as grounds for JNOV.

The trial court also denied Petitioners' motions for a new trial, which were premised in part on alleged evidentiary issues, holding it was not error to admit evidence of the temporary injunction to the jury. With regard to Petitioners' assertions that the verdict was inconsistent or that Allegro was required to elect a remedy, it concluded there was no double recovery and Petitioners' failure to object to the verdict form waived any claim that recovery for any of the claims was premised on the same conduct.

On its initial appeal, the court of appeals reversed and remanded, holding it was error to allow the temporary injunction into evidence and declining to reach Petitioners' challenges to the denial of their JNOV motions. *Allegro, Inc. v. Scully*, 400 S.C. 33, 733 S.E.2d 114 (Ct. App. 2012). Both parties petitioned for certiorari, and this Court denied Allegro's petition, granted Petitioners', and remanded to the court of appeals for consideration of the JNOV issues. *Allegro, Inc. v. Scully*, 408 S.C. 200, 758 S.E.2d 716 (2014). On remand, the court of appeals held the trial court erred in failing to grant directed verdict on the claims of fraud and negligent misrepresentation. *Allegro, Inc. v. Scully*, 409 S.C. 392, 762 S.E.2d 54 (Ct. App.

2014).  In addressing the claims for breach of contract and breach of contract accompanied by a fraudulent act, the court of appeals declined to address Petitioners' argument that Allegro had failed to prove any terms of the contract, finding that argument unpreserved.  *Id.*  Instead, it limited its review to whether evidence was presented that a contract existed and, finding sufficient evidence to overcome that challenge, found no error in the denial of JNOV.  *Id.*  As to the conspiracy claim, the court of appeals concluded Petitioners had not preserved their argument there was no evidence of special damages and only considered whether there was evidence of Corbin's intent to harm.  Finding sufficient evidence, the court found no error in the denial of JNOV on that ground.  *Id.*  Both parties petitioned for rehearing, which was denied.  Only Petitioners sought certiorari, which this Court granted.

## ISSUES PRESENTED

I.      Did the court of appeals err in failing to reverse the trial court's denial of directed verdict on the civil conspiracy claim?

II.     Did the court of appeals err in failing to reverse the trial court's denial of directed verdict on the claims for breach of contract and breach of contract accompanied by a fraudulent act?

## STANDARD OF REVIEW

On review from a trial court's denial of a motion for directed verdict or JNOV, this Court applies the same standard as the trial court and views the evidence and all reasonable inferences in the light most favorable to the nonmoving party.  *Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 28, 602 S.E.2d 772, 782 (2004).  Motions for directed verdict or JNOV should be denied if the evidence yields more than one reasonable inference or its inference is in doubt.  *Strange v. S.C. Dep't of Highways & Pub. Transp.*, 314 S.C. 427, 429–30, 445 S.E.2d 439, 440 (1994).  Further, "[a] motion for JNOV may be granted only if no reasonable jury could have reached the challenged verdict."  *Gastineau v. Murphy,* 331 S.C. 565, 568, 503 S.E.2d 712, 713 (1998).  An appellate court will reverse the trial court's ruling only if no evidence supports the ruling below.  *Welch v. Epstein,* 342 S.C. 279, 300, 536 S.E.2d 408, 418 (Ct. App. 2000).

## I.  CIVIL CONSPIRACY

"A civil conspiracy is a combination of two or more persons joining for the purpose of injuring and causing special damage to the plaintiff." *McMillan v. Oconee Mem'l Hosp., Inc.*, 367 S.C. 559, 564, 626 S.E.2d 884, 886 (2006).  A plaintiff need not allege an unlawful act to state a cause of action; lawful acts may become actionable as a civil conspiracy if the objective is to ruin or damage the business of another.  *LaMotte v. Punch Line of Columbia, Inc.*, 296 S.C. 66, 70, 370 S.E.2d 711, 713 (1988).  Therefore, the primary inquiry in civil conspiracy is whether the principal purpose of the combination is to injure the plaintiff.  *Pye v. Estate of Fox*, 369 S.C. 555, 567, 633 S.E.2d 505, 511 (2006).  "Conspiracy may be inferred from the very nature of the acts done, the relationship of the parties, the interests of the alleged conspirators, and other circumstances."  *Peoples Fed. Sav. & Loan Ass'n of S.C. v. Res. Planning Corp.*, 358 S.C. 460, 470, 596 S.E.2d 51, 57 (2004).  "Civil conspiracy involves acts that are by their very nature covert and clandestine and usually not susceptible of proof by direct evidence."  *McMillan*, 367 S.C. at 564, 626 S.E.2d at 886.

The gravamen of a civil conspiracy claim is the damage resulting to the plaintiff from the acts taken in furtherance of the combination; accordingly, the damages alleged must go beyond the damages alleged in other causes of action.  *Pye*, 369 S.C. at 568, 633 S.E.2d at 511.  "Special damages must be alleged in the complaint to avoid surprise to the other party."  *Sheek v. Lee*, 289 S.C. 327, 329, 345 S.E.2d 496, 497 (1986).

Both the court of appeals and the trial court concluded this argument was unpreserved because trial counsel did not specifically argue special damages during her directed verdict motion at the close of trial.  Petitioners, however, contend the trial court cut her off during her argument and she was therefore simply unable to fully explicate all the grounds for dismissing the claim.  Because the issue of special damages was indisputably raised at the close of Allegro's case, Petitioners contend we should find that argument preserved for review.  We agree the trial court prevented trial counsel from elaborating on her argument.  Specifically, as trial counsel was discussing whether evidence had been presented that Corbin possessed an intent to harm, the trial court, after interrupting her several times on this point, finally admonished her that it had "heard enough about civil [conspiracy] - - go to the cause of action."  We cannot agree that counsel is

required to ignore the trial court's clear instruction to proceed to the next issue in order to preserve an issue. *See State v. Ross*, 272 S.C. 56, 60, 249 S.E.2d 159, 161 (1978) ("We decline to hold that, in order to preserve an objection, when the judge begins to speak counsel must try to speak over him."). Preservation rules are designed to provide an adequate platform for appellate review by ensuring the trial court has had the opportunity to rule on an issue prior to this Court considering the matter. The utility of these rules would be grievously undermined were we to construe them to require futile additional argument after the trial judge has made his position clear.

Turning to the merits, we agree Allegro neither pled nor argued special damages. The complaint merely alleges actual, compensatory, and punitive damages—as it does in each of the other causes of action. Furthermore, at trial, the only evidence offered of damages claimed were the general damages discussed by Daniel McHenry, who approximated the damages "suffered by Allegro as a result of [Petitioners'] action[s] as set forth in the complaint" to be $3.6 million. There was no indication of specific damages emanating solely from the conspiracy. We therefore find the trial court erred in failing to grant Petitioners' JNOV motion and reverse.[3]

## II.    BREACH OF CONTRACT

Scully also argues he is entitled to JNOV on the claims for breach of contract and breach of contract accompanied by a fraudulent act because there was no evidence of the existence of a contract or its terms. We agree.

In an action for breach of contract, the burden is on the plaintiff to prove the contract, its breach, and the damages caused by such breach. *Maro v. Lewis*, 389

---

[3] Allegro made a motion to argue against the precedent of *Todd v. South Carolina Farm Bureau Mutual Insurance Co.*, 276 S.C. 284, 292–93, 278 S.E.2d 607, 611 (1981), in which the Court held a plaintiff must plead and prove special damages to state a cause of action for civil conspiracy. While Chief Justice Pleicones and Justice Beatty would overrule *Todd*, we disagree this is an appropriate vehicle in which to do so given this case's age and procedural posture. This lawsuit was filed over twelve years ago and has already been through a lengthy trial. Given the pending retrial arising out of the remaining causes of action, we believe it would be unfair to the parties to change the pleading and proof requirements at this late stage in the litigation.

S.C. 216, 222, 697 S.E.2d 684, 688 (Ct. App. 2010).  A contract may arise from oral or written words or by conduct.  *Prescott v. Farmers Tel. Co-op., Inc.*, 335 S.C. 330, 335, 516 S.E.2d 923, 926 (1999).  "[F]or a contract to be valid and enforceable, the parties must have a meeting of the minds as to all essential and material terms of the agreement."  *Davis v. Greenwood Sch. Dist. 50*, 365 S.C. 629, 634, 620 S.E.2d 65, 67 (2005).

In finding the trial court did not err in denying the motion for JNOV, the court of appeals, like the trial court, concluded that Scully had only ever argued no contract existed and thus he was precluded from asserting there was no proof of the terms in his post-trial motion.  We believe this conclusion puts too fine a point on the discussion.  If Scully contended there is no proof of a contract, which he indisputably did, necessarily wedded to that assertion is the notion that no terms of that nonexistent contract have been proven either.  This is especially true where the alleged contract had no written basis from which a jury could divine the terms—no handbook, employee agreement, or noncompete agreement.  Part of proving that some enforceable contract exists is being able to identify the terms thereof.  *See Mathis v. Brown & Brown of S.C., Inc.*, 389 S.C. 299, 308, 698 S.E.2d 773, 778 (2010) (holding that for a contract to be valid and enforceable, there must be a meeting of the minds as to all essential and material terms of the agreement).

While there may have been evidence of an agreement by conduct—Scully admittedly served as the president of Allegro and performed certain duties and tasks in accordance with such employment—there is nothing to suggest this was anything other than an at-will relationship.  *See Mathis*, 389 S.C. at 309, 698 S.E.2d at 778 ("In South Carolina, employment at-will is presumed absent the creation of a specific contract of employment.").  Unable to point to explicit contractual terms in order to allege their breach, Allegro claims Scully breached the implied covenant of good faith and fair dealing.  However, absent some alteration in at-will employment status, there is no contract into which we could imply this duty.  *Williams v. Riedman*, 339 S.C. 251, 274, 529 S.E.2d 28, 40 (Ct. App. 2000) ("[W]e have declined to apply [the] covenant [of good faith and fair dealing] to the employment at-will situation where no contract exists."); *Keiger v. Citgo, Coastal Petroleum, Inc.*, 326 S.C. 369, 374, 482 S.E.2d 792, 794 (Ct. App. 1997) ("[T]he implied covenant of good faith and fair dealing that is implied in every contract applies to employment contracts *that alter* the at-will employment status." (emphasis added)).

With no material terms provided or alleged, we find no contract on which Allegro can predicate its claims of breach of contract and breach of contract accompanied by a fraudulent act. We therefore reverse the court of appeals and dismiss those causes of action.

## CONCLUSION

Based on the foregoing, we reverse the court of appeals, finding it erred in affirming the trial court's denial of Petitioners' motion for JNOV on the claims for civil conspiracy, breach of contract, and breach of contract accompanied by a fraudulent act. Consistent with the disposition of the court of appeals' opinion, the case is remanded for trial on the remaining causes of action against Scully and Yarborough.

**Acting Justices Jean H. Toal and James E. Moore, concur. BEATTY, J., concurring in part and dissenting in part in a separate opinion. PLEICONES, C.J., dissenting in a separate opinion.**

**JUSTICE BEATTY:** Respectfully, I concur in part and dissent in part. While I concur with the majority's decision to reverse the Court of Appeals, I agree with the dissent's position advocating for this Court to overrule *Todd* and its progeny.

**CHIEF JUSTICE PLEICONES:** I respectfully dissent and would affirm the decision of the Court of Appeals which remanded all causes of action for a new trial.

## A. Civil Conspiracy

I would take this opportunity to clarify the law of civil conspiracy. The definition of civil conspiracy is "the conspiring together to do an unlawful act to the detriment of another or the doing of a lawful act in an unlawful way to the detriment of another." [4]  *Charles v. Texas Co.*, 192 S.C. 82, 5 S.E.2d 464 (1939). A civil conspiracy is not actionable unless overt acts proximately damage the plaintiff. *Todd v. S.C. Farm Bureau Mut. Ins. Co.*, 276 S.C. 284, 278 S.E.2d 607 (1981) *appeal after remand* 283 S.C. 155, 321 S.E.2d 602 (Ct. App. 1984) *quashed in part on other grounds* 287 S.C. 190, 336 S.E.2d 472 (1985). In *Todd*, the Court created a new rule of pleading for civil conspiracy claims, holding that the plaintiff in a civil conspiracy action must allege damages different from those alleged in any other of her tort causes of action. In creating this new rule of pleading, the *Todd* Court cited 15A C.J.S *Conspiracy* § 33. From this holding in *Todd* evolved the requirement that the civil conspiracy plaintiff must both plead and prove "special damages" in order to recover. We granted respondent's motion to argue against the "special damages" rule derived from *Todd*. After review, I agree with respondent that the *Todd* Court misread and misapplied § 33, which merely states a prohibition on double recovery, not a rule of pleading or proof:

> Where the particular acts charged as a conspiracy are the same as those relied on as the tortious act or actionable wrong, plaintiff cannot recover damages for such act or wrong, and recover likewise on the conspiracy to do the act or wrong.

15A C.J.S. *Conspiracy* § 33.

I would overrule *Todd* and its progeny to the extent they create a "special damages" pleading and/or proof requirement for a civil conspiracy cause of action.

Turning to the facts of this case, the majority holds that the petitioners' JNOV motion on the civil conspiracy verdict should have been granted, at least in part,

---

[4] This definition derives from Lord Dehman's statement in *King v. Jones*, 110 Eng. Rep. 485, 487 (K.B. 1832).

because of an alleged *Todd* flaw in respondent's pleading.[5]  A directed verdict and a JNOV are directed at the evidence, not the pleadings.  In any case, as there is evidence in this record of damages resulting from the conspiracy, I agree with the Court of Appeals that a retrial on this cause of action is appropriate.[6]

## B.  Contract

I also disagree with the majority's disposition of the breach of contract and breach of contract accompanied by a fraudulent act causes of action against petitioner Scully.  The majority finds Scully was entitled to a JNOV on the contract claims because "no material terms [were] provided or alleged," again indicating some confusion between evidence sufficient to withstand a directed verdict/JNOV motion and the sufficiency of pleadings.  In ruling on petitioner Scully's JNOV motion, the trial court held there was evidence of an oral contract, and that to the extent petitioner Scully sought to argue in his JNOV that the terms of that oral contract were too vague, his argument was foreclosed by his failure to raise the vagueness issue at the directed verdict stage.  *See*, *e.g.*, *State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms. Inc.*, 414 S.C. 33, 777 S.E.2d 176 (2015) (only grounds raised in directed verdict motion may be raised in JNOV motion).  Petitioner Scully failed to challenge this procedural ruling, and despite the majority's decision to combine the issues of the existence of a contract and the evidence of its terms on certiorari, in my opinion, the Court of Appeals properly refused to address the unpreserved "terms" argument on appeal.  *Janssen*, *supra*.  In any case, the denial of the directed verdict motion on the existence of an oral contract and/or a contract by conduct is supported by the testimony of both Ms. McCarthy and petitioner Scully, and the majority errs in holding that there was no evidence of a contract sufficient to support the jury's finding that Scully violated the implied covenant of good faith and fair dealing.  I would uphold the Court of Appeals' decision affirming the denial of petitioner Scully's JNOV motions on both contract claims, which should be retried on remand.

---

[5] This 'pleading' issue was not raised at trial nor was it raised by the petitioners in brief.

[6] Even if the Court were to preserve the *Todd* rule, the sole claim asserted against petitioner Corbin was civil conspiracy, and thus as to him the "special damages" rule created by *Todd* does not apply.

For the reasons given above, I would overrule *Todd* and affirm the Court of Appeals.